NORTHEAST PETROLEUM CORPORATION *vs.* COMMISSIONER OF
REVENUE.

Suffolk. March 6, 1985. — June 13, 1985.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Taxation*, Corporate excise, Liquidation of controlled foreign subsidiary.

On appeal from a decision of the Appellate Tax Board affirming the refusal
of the Commissioner of Revenue to abate corporate excise tax on the
distribution received by a taxpayer upon the liquidation under § 337 of
the Internal Revenue Code of its fifty per cent owned subsidiary, this
court remanded the matter to the board to permit it to determine whether,
under G. L. c. 63, § 38 (*a*) (1), considered in light of *Commissioner of
Revenue* v. *Shafner*, 392 Mass. 256 (1984), the distribution is excludible
from taxable income. [211-214]

APPEAL from a decision of the Appellate Tax Board.

*Robert M. Buchanan (Jonathan B. Dubitzky & Shelagh A.
Ellman* with him) for the taxpayer.

*Jamie W. Katz*, Assistant Attorney General, for the Commis-
sioner of Revenue.

LYNCH, J. Northeast Petroleum Corporation (taxpayer) ap-
peals from a decision by the Appellate Tax Board (board)
denying an abatement of a tax on the distribution received by
the taxpayer upon the liquidation of its fifty per cent owned
subsidiary, Energy Corporation of Louisiana (Energy). The
board upheld a refusal by the Commissioner of Revenue (Com-
missioner) to abate the taxpayer's corporate excise for the fiscal
year ending June 30, 1977.[1] We reverse the decision of the
board and remand for further proceedings in light of our opinion
in *Commissioner of Revenue* v. *Shafner*, 392 Mass. 256 (1984).

---

[1] The taxpayer has paid the disputed tax, $2,521,470, together with
$859,638.78 in interest.

We summarize the parties' stipulation of agreed facts. The taxpayer is incorporated under the laws of the Commonwealth and is engaged in selling, distributing, trading, and transporting petroleum products, principally in New England. Its sole shareholder is Northeast Petroleum Industries, Inc., a Delaware corporation. In 1973, the taxpayer entered into a joint venture with Ingram Corporation (Ingram) to build a petroleum refinery in Louisiana. In May, 1973, the taxpayer and Ingram incorporated Energy under Delaware law. Energy issued all its stock to Ingram and the taxpayer, each receiving fifty per cent of the shares. In April, 1974, Energy organized a wholly-owned subsidiary, ECOL, Ltd. (ECOL), a Louisiana corporation which was to purchase the refinery site and then construct the refinery.[2] Thereafter, ECOL purchased the stock of the corporation owning the site for the proposed refinery.[3] ECOL liquidated the corporation holding the site and commenced construction.

The taxpayer's investment in Energy never exceeded $10 million. The project eventually cost approximately $285 million. Substantially all the costs of constructing the refinery were financed by bank loans and advance payments for refinery output by a utilities company. As a condition to the $250 million credit agreement that financed substantially all the refinery construction costs, the taxpayer and Ingram jointly agreed to execute contracts to purchase 15% (by volume) of the refinery's output, on a cost-plus basis.[4] In fulfilment of this condition, the taxpayer and Ingram each separately contracted to purchase 7 ½% of the refinery output.

In 1976, prior to completion of construction of the refinery, a change occurred in Federal law which adversely affected the

---

[2] ECOL was created because lenders required a pledge of all refinery assets. This security interest was most easily granted by pledging the stock of a subsidiary.

[3] ECOL had acquired from Ingram an option to purchase stock of the corporation whose principal asset was a Louisiana site for the project.

[4] The price at which the taxpayer would purchase the refinery product could have exceeded market prices.

economic feasibility of the project. Therefore, Energy accepted an offer from a subsidiary of Marathon Oil Company, a corporation unrelated to the taxpayer and Ingram, to purchase its only asset, the stock of ECOL. On September 20, 1976, Energy sold all the ECOL stock for $140 million in cash. Energy was then liquidated, passing on a capital gain of $44,658,048 each to the taxpayer and Ingram. The refinery performed no commercial operations and sold no product during the period that it was owned by Energy.

Energy's gain from the sale of its stock in ECOL was taxed by the State of Louisiana. That tax was $3,721,444. The taxpayer paid one-half of this tax, or $1,860,722, on behalf of Energy.[5] Energy was completely liquidated on June 14, 1977, when it distributed to the taxpayer and Ingram the sale proceeds remaining after payment of expenses. For Federal income tax purposes, the taxpayer had a capital gain of $44,658,048 on its 50% share of Energy's net proceeds. After payment of Federal taxes, the taxpayer had a posttax gain of $31,251,546. Within eight months after the liquidation of Energy, the taxpayer's parent corporation, Northeast Petroleum Industries, Inc., distributed approximately $25.3 million, or about 81% of the net liquidation proceeds, in complete redemption of the stock of certain of its shareholders.

When the taxpayer filed its Form 355A Massachusetts corporate excise return for the year ending June 30, 1977, it also filed a statement in accordance with G. L. c. 63, § 42, requesting approval of the use of an alternative method of apportioning its income to Massachusetts. The tax return reported no Massachusetts income and reflected a $518,478 loss, of which 58.6% was apportioned to Massachusetts. After an audit, the

---

[5] Unlike the treatment under Federal tax law of a liquidated corporation, see I.R.C. § 337 (1982), Louisiana holds the liquidating corporation rather than the stockholders of the corporation liable for the tax due on the transaction. Although the taxpayer, a stockholder of the liquidating corporation, was under no obligation to pay any of Energy's tax liability to Louisiana, it nevertheless paid one-half of that liability. The taxpayer then filed a Louisiana franchise tax return in its own name, on which it was allowed an exclusion for its share of the capital gain on the liquidation of Energy. As a result, no additional tax was due to Louisiana.

Commissioner issued to the taxpayer a notice of assessment of an additional $2,521,470 corporate excise for the year ending June 30, 1977, together with interest of $789,776,55.[6] The assessment, issued on March 30, 1981, was in accordance with the apportionment formula provided in G. L. c. 63, § 38. The assessment allocated 58.6% of the taxpayer's income to Massachusetts, but excluded from that computation the property, payroll, and sales of Energy and ECOL. On May 5, 1981, the taxpayer filed an application for a $2,486,113 abatement of the corporate excise assessed, together with all interest thereon. On June 10, 1981, the taxpayer was notified of the Commissioner's refusal to abate the tax. On June 17, 1981, the taxpayer paid the entire amount of the assessed tax.

On August 7, 1981, the taxpayer appealed the Commissioner's decision to the board, which issued a decision in favor of the Commissioner on May 16, 1983. Pursuant to the taxpayer's request, the board issued findings of fact and report on June 25, 1984. The board found that under G. L. c. 63, § 38, the taxpayer had received "income derived from business carried on within the commonwealth" when it redeemed the Energy stock and received the $44,658,048 capital gain.[7] The board concluded that the gain was taxable because it was de-

---

[6] During the year ending June 30, 1977, ECOL owned property with a tax basis of $202,921,945, none of which was located in Massachusetts; ECOL's employees received $1,578,147 in compensation ($600,647 paid by ECOL, and $977,500 in termination payments paid by Energy), none of it on a Massachusetts payroll; and ECOL had no Massachusetts sales.

[7] General Laws c. 63, § 32, as amended by St. 1975, c. 684, § 48, provides, in relevant part: "Except as otherwise provided herein, every domestic corporation, exercising its charter, or qualified to do business or actually doing business in the commonwealth . . . shall pay, on account of each taxable year, the excise provided in . . . this section . . . . The excise levied herein is due and payable on any one or all of the following alternative incidents: 1) The qualification to carry on or do business in this state or the actual doing of business within the commonwealth in a corporate form. The term 'doing business' as used herein shall mean and include each and every act, power, right, privilege, or immunity exercised or enjoyed in the commonwealth, as an incident to or by virtue of the powers and privileges acquired by the nature of such organizations, as well as, the buying, selling or procuring of services or property."

rived from an investment in a Delaware corporation and constituted the carrying on of business in Massachusetts, not in Louisiana. The board found that the taxpayer, which had never conducted business operations in Louisiana, made a decision to invest in an out-of-State venture from which it hoped to reap capital appreciation without a large commitment of time and energy toward the project's management. The board concluded that the Commissioner was not seeking to tax the income of an ongoing business engaged in interstate commerce. It found rather that the tax was imposed on the taxpayer for the privilege of transacting business as a Massachusetts corporation.

The board concluded, furthermore, that the taxpayer's payment of one-half of Energy's tax liability to Louisiana was not dispositive of the issue whether the gain was derived from the taxpayer's business in Louisiana or Massachusetts. The board stated that under Louisiana law, La. Rev. Stat. Ann. § 47:135 (West Supp. 1985), Energy was liable for a tax on the transaction, not the taxpayer. The board also concluded that, since the project constituted the carrying on of business in Massachusetts, the taxpayer's gain was not grossly disproportionate to its Massachusetts business. The board found, therefore, that the Commissioner correctly allocated a portion of the taxpayer's capital gain in the calculation of its corporate excise. The board concluded that the taxpayer had not carried its burden of establishing that the calculation of the excise under G. L. c. 63, § 38, was not reasonably adapted to approximate the taxpayer's income derived from its Massachusetts business.

The taxpayer argues on several grounds that the board erred in upholding the Commissioner's refusal to abate the corporate excise on the distribution received by the taxpayer upon the liquidation of Energy. The taxpayer contends, first, that the distribution was a dividend received in a liquidation under I.R.C. § 337 and is exempt from corporate taxation under G. L. c. 63, § 38 (*a*) (1). It finds support for this argument in our decisions in *Dow Chem. Co.* v. *Commissioner of Revenue*, 378 Mass. 254, 267-272 (1979) (deemed distribution from foreign subsidiary is deductible from taxable income as

dividend under G. L. c. 63, § 38 [a] [1], where it had already been taxed to the subsidiary), and *Commissioner of Revenue* v. *Shafner*, 392 Mass. 256 (1984) (distribution which shareholders received from a liquidation under I.R.C. § 337 of a corporate trust is a dividend exempt from tax under G. L. c. 62, § 8 [c]). We decided *Shafner*, however, after the board had issued its decision in this case and just five days prior to the issuance of its findings of fact and report. We hold that it is appropriate to remand this case to the board for further consideration in light of *Shafner*. We conclude, therefore, that it is unnecessary to consider the other arguments raised by the taxpayer on appeal.

The Commissioner contends that the taxpayer may not claim that the distribution is a dividend exempt from tax under G. L. c. 63, § 38 (*a*) (1), because the taxpayer has waived this argument by failing to raise it before the board. It is well established that failure to raise a statutory or constitutional question before the board generally bars a party from raising it on appeal. See G. L. c. 58A, § 13; *Minchin* v. *Commissioner of Revenue*, 393 Mass. 1004, 1004-1005 (1984); *Johnson* v. *Department of Revenue*, 387 Mass. 59, 62-63 (1982); *Commissioner of Revenue* v. *McGraw-Hill, Inc.*, 383 Mass. 397, 404-405 (1981); *New Bedford Gas & Edison Light Co.* v. *Assessors of Dartmouth*, 368 Mass. 745, 751-752 (1975). Cf. *Gurry* v. *Board of Public Accountancy*, 394 Mass. 118, 125-126 (1985); *M. H. Gordon & Son* v. *Alcoholic Beverages Control Comm'n*, 386 Mass. 64, 68-69 (1982). We conclude, however, that the taxpayer in this case is not precluded from raising its argument under G. L. c. 63, § 38 (*a*) (1), on appeal. The taxpayer relied upon that statutory provision in its petition, and argued before the board that the statutory policy against multiple taxation suggests that it is improper to tax the distribution in this case. The taxpayer's requests for findings of fact and rulings of law, and its posttrial briefs, also raise the multiple taxation issue. Furthermore, at all stages of the proceeding, the taxpayer relied on *Dow Chem. Co.* v. *Commissioner of Revenue, supra,* in which the court concluded that the Commissioner erred in failing to allow a deduction under G. L. c. 63,

§ 38 (*a*) (1), for dividends of a foreign corporation deemed distributed in the taxable year. *Id.* at 272. The taxpayer could not have cited our decision in *Shafner* as support because that case was decided after the board's decision and only shortly before the board issued its findings of fact and report. Although the taxpayer could have been more precise in its argument before the board that the distribution was exempt from tax as a dividend under § 38 (*a*) (1), we conclude that the taxpayer was not so remiss that it should be held to have waived this argument and therefore be precluded from raising it on appeal.

In light of the similarities between *Shafner* and the facts of the instant case, we conclude that it is appropriate to let the board pass on the question of the applicability of G. L. c. 63, § 38 (*a*) (1), before we render a judgment on the question.[8] This is consistent with our traditional deference to the expertise of the board in tax matters involving interpretation of the laws of the Commonwealth. See *French* v. *Assessors of Boston*, 383 Mass. 481, 482 (1981). In *Commissioner of Revenue* v. *Shafner*, 392 Mass. 256 (1984), a Massachusetts corporate trust was liquidated in accordance with I.R.C. § 337. *Id.* at 257. The liquidating distribution in *Shafner* had been taxed by the Commonwealth at the corporate trust level. *Id.* at 258. The trustees of the corporate trust made cash distributions of the proceeds from the liquidation to the trust's shareholders, including the taxpayers in that case. We held that the cash distributions to the taxpayers were "dividends" under G. L. c. 62, § 1 (*e*), and, therefore, exempt from taxation under G. L. c. 62, § 2 (*a*) (2) (D). *Id.* at 259-260.

---

[8] General Laws c. 63, § 38, as amended through St. 1983, c. 233, § 44, provides, in relevant part: "The commissioner shall determine the part of the net income of a domestic business corporation or of a foreign corporation derived from business carried on within the commonwealth as follows: (*a*) Net income as defined in [G. L. c. 63, § 30] adjusted as follows shall constitute taxable net income: (1) Dividends included therein shall be deducted other than dividends from or on account of the ownership of : (*i*) shares in a corporate trust, as defined in [G. L. c. 62, § 1], engaged in business in the commonwealth, or . . . (*iii*) any class of stock, if the corporation owns less than fifteen per cent of the voting stock of the corporation paying such dividend."

Although *Shafner* involved the taxation of a trust under analogous provisions of G. L. c. 62, the board could apply the principles of that case to the distribution by Energy and rule that it was a "dividend" exempt from tax under G. L. c. 63, § 38 (*a*) (1), which provides that only those "dividends" distributed to a "corporation own[ing] less that fifteen per cent of the voting stock of the corporation paying such dividend" may be taxed to the corporate shareholder as net income under G. L. c. 63, § 30. Such a result would be consistent with the policy against duplicative taxation expressed in *Commissioner of Revenue* v. *Shafner, supra,* and *Dow Chem. Co.* v. *Commissioner of Revenue, supra.* See also *Rohrbough, Inc.* v. *Commissioner of Revenue,* 385 Mass. 830, 831 (1982). On the other hand, the board may decide that the principles of *Shafner* do not control. In either case, we would review the decision of the board in the light of its expertise and the traditional deference due its decisions.

Because of the view we take of this case, we conclude that it is not necessary to address the additional statutory and constitutional arguments advanced by the taxpayer. The decision of the Appellate Tax Board affirming the Commissioner's refusal to abate the tax is reversed. The case is remanded for further proceedings consistent with this opinion.

*So ordered.*