COMMISSIONER OF REVENUE *vs.* NORTHEAST PETROLEUM CORPORATION.

Suffolk. April 8, 1987. — October 26, 1987.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Taxation,* Corporate excise, Liquidation of controlled foreign subsidiary.

A distribution received by a corporate taxpayer upon the liquidation under § 337 of the Internal Revenue Code of its fifty per cent owned subsidiary was a dividend, and consequently, the distribution was excludible from taxable income under G. L. c. 63, § 38 (*a*) (1). [45-50] HENNESSEY, C.J., with whom O'CONNOR, J., joins, dissenting.

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted requests for direct appellate review.

*Robert M. Buchanan (Jonathan B. Dubitzky & Shelagh A. Ellman* with him) for the Commissioner of Revenue.

*Douglas H. Wilkins,* Assistant Attorney General, for the taxpayer.

LYNCH, J. The Commissioner of Revenue (Commissioner) appeals from a decision of the Appellate Tax Board (board) ordering an abatement of $3,311,246.55 plus interest to Northeast Petroleum Corporation (Northeast) on the gain realized from the distribution received on the liquidation of its fifty per cent owned subsidiary, Energy Corporation of Louisiana (Energy). In a prior opinion, we reversed the decision of the board and remanded for further proceedings in light of our opinion in *Commissioner of Revenue* v. *Shafner,* 392 Mass. 256 (1984). *Northeast Petroleum Corp.* v. *Commissioner of Revenue,* 395 Mass. 207 (1985) (*Northeast Petroleum I*). The board reconsidered the matter and ordered the abatement. The Commissioner appealed, we allowed the parties' applications for direct appellate review, and we now affirm the decision of the board.

A more complete statement of the facts relevant to this appeal appears in *Northeast Petroleum I, supra* at 208-211. Northeast, a Massachusetts corporation, entered into a joint venture with Ingram Corporation to build a petroleum refinery in Louisiana. The taxpayer and Ingram formed a corporation, Energy, each receiving fifty per cent of the shares. Energy organized a wholly-owned subsidiary, ECOL, Ltd. (ECOL), a Louisiana corporation which was to purchase the refinery site and then construct the refinery. In 1976, prior to completion of construction of the refinery, Energy accepted an offer from a corporation unrelated to the taxpayer and Ingram to purchase its only asset, the stock of ECOL. On September 20, 1976, Energy sold all the ECOL stock. Energy was then liquidated, and Northeast realized a capital gain of $44,658,048, on the redemption of its shares in Energy. Energy, by adopting a plan of complete liquidation under § 337 of the Internal Revenue Code (I.R.C.), was not taxed by the United States on the gain realized in its liquidation. Instead the gain was recognized by the liquidating corporation's shareholders Northeast and Ingram.

Northeast filed a corporate excise return for the year ending June 30, 1977, and reported a loss of $518,478, before apportionment and after deducting the $44,658,048, in net capital gain. After an audit the Commissioner issued to the taxpayer a notice of assessment and, after an application for abatement was denied, the taxpayer paid the entire amount of the assessed tax. Northeast appealed to the board, and the board issued a decision in favor of the Commissioner. We reversed the decision and remanded the case to the board to be reconsidered in light of *Commissioner of Revenue* v. *Shafner, supra.* On remand the board adopted the reasoning of *Shafner,* and concluded that the liquidation distribution that Northeast received from Energy was a dividend deductible from Northeast's net income in arriving at its taxable income. The board ordered an abatement of $3,311,246.55, plus interest, and the Commissioner appealed.

The Commissioner argues that the board erred in applying the principles of *Shafner* to the facts of this case and that the

gain on the distribution in liquidation of Energy is not a dividend deductible under G. L. c. 63, § 38 (*a*) (1) (1986 ed.).[1] The board correctly stated the applicable Massachusetts law to be as follows: "As a domestic business corporation, Northeast is taxable in Massachusetts, if at all, pursuant to G. L. c. 63, §§ 30 through 52. In computing its Massachusetts net income, a business corporation, both foreign and domestic, subtracts the deductions, but not credits, allowable under the Internal Revenue Code from its Massachusetts gross income. G. L. c. 63, § 30 (5) (*b*). Massachusetts gross income is essentially equal to Federal gross income with certain modifications not here relevant. G. L. c. 63, § 30 (5) (*a*). Dividends are specifically included in the Massachusetts net income of a business corporation. G. L. c. 63, § 30 (5) (*b*) (*i*)."

In order to determine that part of net income which is derived from business carried on within Massachusetts, the dividends included in net income under G. L. c. 63, § 30, are, with certain exceptions not here relevant, deducted to arrive at Massachusetts taxable income. G. L. c. 63, § 38 (*a*) (1). Therefore, if the liquidating distribution which Northeast received by virtue of its ownership of fifty per cent of the stock of Energy was a "dividend," it would not be includible in Northeast's Massachusetts taxable income.

Citing our opinion in *Shafner,* the board concluded that the liquidating distribution was a dividend and thus deductible from net income under § 38. Although a dividend is not defined within G. L. c. 63, the board applied the definition of dividend

---

[1] General Laws c. 63, § 38, in relevant part, states: "The commissioner shall determine the part of the net income of a domestic business corporation or of a foreign corporation derived from business carried on within the commonwealth as follows: (a) Net income as defined in section thirty of this chapter adjusted as follows shall constitute taxable net income: (1) Dividends included therein shall be deducted other than dividends from or on account of the ownership of: (i) shares in a corporate trust, as defined in section one of chapter sixty-two, engaged in business in the commonwealth, or (ii) deemed distributions and actual distributions, except actual distributions out of previously taxed income, from a DISC which is not a wholly owned DISC, or (iii) any class of stock, if the corporation owns less than fifteen per cent of the voting stock of the corporation paying such dividend."

as that term is defined under § 316 of the I.R.C. (26 U.S.C. § 316 [1976]), reasoning that the Legislature's adoption of the I.R.C.'s definition of gross income for purposes of G. L. c. 63, § 30 (5) (*a*), implied a similar adoption of the definition for dividends. Furthermore, the board cited § 38 (*a*) (1) and its similar treatment of dividends "from or on account of the ownership of: (*i*) shares in a corporate trust" and those "from or on account of the ownership of . . . (*iii*) any class of stock . . . ." Given our conclusion in *Shafner* that a distribution in liquidation of a corporate trust constituted a dividend for purposes of G. L. c. 62, §§ 2 (*a*) (2) (D) and 8 (*c*), the board saw no reason to conclude otherwise for purposes of § 38 (*a*) (1). We agree.

A review of the facts in *Shafner* and the instant case reveals the almost identical nature of the two transactions. In *Shafner* the taxpayers were shareholders of a corporate trust. Here, the taxpayer is a shareholder of a corporation. However, there is no intrinsic difference between a corporate business trust and a corporation. Additionally, both entities adopted a plan of complete liquidation under § 337 of the I.R.C. In both cases the liquidating entities sold the assets and distributed all the proceeds to shareholders who were afforded capital gain treatment under the Federal code. No Federal income tax was paid by either. Both entities paid State taxes, although in this case the State receiving the tax was Louisiana.

Under G. L. c. 62, § 1 (*e*) (1986 ed.), a dividend is defined as "any item of federal gross income which is a dividend under [§ 316] of the Code or which is treated as a dividend under any other provision of the Code."[2] General Laws c. 63, does not define dividends, although G. L. c. 63, § 38 (*a*), adopts the Federal definition of gross income which, as the board

---

[2] Section 316 of the I.R.C. defines dividend as "any distribution of property made by a corporation to its shareholders — (1) out of its earnings and profits accumulated after February 28, 1913, or (2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made."

correctly notes, includes dividends. I.R.C. § 61 (*a*) (7). Under
G. L. c. 63, § 30 (5) (*a*), dividends are included in net Mas-
sachusetts corporate income, although they may be deducted
in certain instances to arrive at Massachusetts taxable income.
See G. L. c. 63, § 38 (*a*) (1).

Not only are the two transactions practically identical, but
nowhere in G. L. c. 63 has the Legislature indicated an intention
to treat liquidation proceeds in one case, but not the other, as
dividends.

The Commissioner asks us to depart from *Shafner* and the
traditional meaning of the term dividend and to look at the
over-all purpose and intent behind c. 63. The dissent concludes
that, because the Federal code subdivides gross income into
categories (including dividends, I.R.C. § 61 [*a*][7], and gains
derived from dealing in property, I.R.C. § 61 [*a*][3]), the
meaning of the term dividend changes. We do not agree.
Nowhere does the Legislature demonstrate an intent to change
the commonly accepted definition of dividend. There is no
dispute that the distribution to Northeast is income under G. L.
c. 63, § 30 (5) (*a*). However, G. L. c. 63, § 30 (5) (*a*), operates
to define only *income,* not dividends; dividends are defined
elsewhere in the I.R.C. See I.R.C. § 316.

Moreover, the distribution received by Northeast is com-
monly referred to as a dividend, albeit a "liquidating dividend."
General Laws c. 156B, § 103, refers to distributions by a
corporation terminating its existence as "liquidating div-
idends." Several Massachusetts decisions also refer to proceeds
from the termination of a corporation or trust as "liquidating
dividends." See, e.g., *New England Merchants Nat'l Bank* v.
*Old Colony Trust Co.,* 385 Mass. 24 (1982). *State Tax Comm'n*
v. *Fitts,* 340 Mass. 575 (1960). See also Black's Law Dictio-
nary 839 (rev. 5th ed. 1979) (defining proceeds from similar
transactions as a "liquidation dividend").

Lastly, this case should be considered in the context of
*Northeast Petroleum I,* where the court said, "Although *Shafner*
involved the taxation of a trust under analogous provisions of
G. L. c. 62, the board could apply the principles of that case
to the distribution by Energy and rule that it was a 'dividend'

exempt from tax under G. L. c. 63, § 38 (*a*) (1), which provides that only those 'dividends' distributed to a 'corporation own[ing] less than fifteen per cent of the voting stock of the corporation paying such dividend' may be taxed to the corporate shareholder as net income under G. L. c. 63, § 30. Such a result would be consistent with the policy against duplicative taxation expressed in *Commissioner of Revenue* v. *Shafner, supra,* and *Dow Chem. Co.* v. *Commissioner of Revenue,* [378 Mass. 254 (1979)]. See also *Rohrbough, Inc.* v. *Commissioner of Revenue,* 385 Mass. 830, 831 (1982). On the other hand, the board may decide that the principles of *Shafner* do not control. In either case, we would review the decision of the board in the light of its expertise and the traditional deference due its decisions." 395 Mass. at 214.

The board ruled that the Internal Revenue Code definition of dividend applies as that term is used in G. L. c. 63, because the Legislature chose to adopt the I.R.C. definition of gross income, which included dividends for the purpose of defining gross income of a Massachusetts corporation. G. L. c. 63, § 30 (5) (*a*). Moreover, the board relies on the fact that G. L. c. 63, § 38 (*a*), uses the term "dividends" to refer to sums received from corporate trusts, as well as business corporations as evidence that the Legislature did not intend to use the term differently in the two statutes.

Finally, the board relied on the fact that under the I.R.C., which has become the fundamental source of tax law in the Commonwealth, the term dividend has acquired the particular meaning adopted in this case.

Following the mandate of this court in *Northeast Petroleum I,* the board then ruled that "as a matter of law, a dividend for purposes of G. L. c. 63, § 38 (*a*) (1) is any distribution of property made by a corporation out of its earnings and profits and that, under *Shafner,* a liquidating distribution is, as a matter of law, out of earnings and profits to the extent that it exceeds the original paid-in capital." There was no error. There is no distinction between the term "dividend" as applied in *Shafner,* under G. L. c. 62, and as used here under c. 63. It was, of

course, open to the Legislature to provide a different meaning in G. L. c. 63. It did not do so.

The decision of the Appellate Tax Board is affirmed.

*So ordered.*

HENNESSEY, C.J. (dissenting, joined by O'Connor, J.). I dissent. The court has concluded that the Appellate Tax Board (board) has appropriately followed the decision in *Commissioner of Revenue* v. *Shafner,* 392 Mass. 256 (1984), in its treatment of a liquidation distribution as a dividend. Although both this case and *Shafner* involve liquidation distributions, the cases are distinguishable in a meaningful way, thus justifying a differing result. First, and most importantly, different taxpayers and business entities are involved — individual shareholders and a liquidating corporate trust in *Shafner* and a corporate shareholder and a liquidating corporation here — requiring the application of different chapters of the General Laws in each instance. Second, the statutory provisions at issue differ. Chapter 62, which was considered in *Shafner,* specifically included a definition of the term dividend; c. 63 includes no such definition. Third, the liquidating corporate trust in *Shafner* was taxed by the State. Consequently, taxation of the individual shareholder receiving the liquidating distribution would result in double taxation. Under c. 63, a liquidating corporation is not taxed by the State, and, thus, if the shareholder receiving the corporate liquidation is not taxed, the transaction occurs tax free. Because this does not occur for Federal tax purposes, it is unlikely that the Legislature intended that it occur for State tax purposes.

The board adopted the definition of dividend as provided in I.R.C. § 316 (and as referenced by G. L. c. 62, § 1 [e]) for three reasons:

(1) "Since the Internal Revenue Code provides the source for the definition of Massachusetts gross income, it seems appropriate to use the same source for defining the various components of gross income . . . ." This point does not support

the board's determination, however, because gains on liquidation distributions are not included in gross income as a dividend but as dealings in property. Thus, if the Internal Revenue Code is to be looked to for guidance, it should be for the manner in which similar transactions are *treated* and not for the bald definitions.

(2) "[I]n G. L. c. 63, § 38 (a), 'dividends' is used in the same sentence to refer to dividends received on shares in a corporate trust and to those received on any class of stock owned by a corporation, further undercutting the argument that a 'dividend' for corporate excise purposes is something different than a personal income tax 'dividend'."[1] This point also fails to support the board's conclusion. Northeast contends that, because G. L. c. 63, § 38 (*a*) (1) (*iii*), does not apply in this instance, the liquidation distribution will be deductible if it is determined to be a dividend. Because *Shafner* has already determined that a liquidation distribution from a corporate trust is a dividend, it will not be deductible under § 38 (*a*) (1) (*i*). Given our decision in *Shafner* and our desire to avoid double taxation, the liquidating distribution from a corporate trust is a distribution that should be deductible. The contrary result required by the statute indicates that the principles in *Shafner* should not apply.

(3) Finally, the board determined that the term "'[d]ividend' ha[d] acquired a peculiar meaning in law by virtue of its definition in the Internal Revenue Code." While I agree with this statement, and thus we cannot decide this case on the basis of the common understanding of the word dividend, we must look to the treatment of a liquidation distribution and not to the definition of the term dividend under the Internal Revenue Code. When we examine the treatment of this transaction for

---

[1] General Laws c. 63, § 38 (*a*), states in relevant part: "(1) Dividends included [in Net Income] shall be deducted other than dividends from or on account of the ownership of: (*i*) shares in a corporate trust, as defined in section one of chapter sixty-two, engaged in business in the commonwealth, or . . . (*iii*) any class of stock, if the corporation owns less than fifteen per cent of the voting stock of the corporation paying such dividend."

Federal tax purposes, no dividend is involved. Thus, it distorts the analysis to look to the Internal Revenue Code in this instance but return with a result that is inconsistent with the Code.

The court expresses the thought that we remanded this case to the board in order that it should consider the effect of *Shafner,* and now, after the board accepted the analysis of *Shafner,* the court should affirm the board's decision. However, the earlier opinion provided no instructions to the board to apply the principles of *Shafner.* Thus, a reversal of the board's decision is not inconsistent with that opinion.[2] Furthermore, the board found "troublesome distinction[s]" between *Shafner* and the instant case and the result produced by the application of *Shafner* "unpalatable." Nevertheless, the board found its decision compelled "as a matter of law." This is a case of statutory construction, and even if we conclude that the views of the board are relevant, we should not be influenced by the reluctant conclusions (as judged by the tone of the decision) reached by the board. I submit that the statutes, properly construed, mandate that the board's decision be reversed and the liquidation distribution be taxed.

---

[2] We stated: "In light of the similarities between *Shafner* and the facts of the instant case, we conclude that it is appropriate to let the board pass on the question of the applicability of G. L. c. 63, § 38 (*a*) (1), before we render a judgment on .the question . . . . Although *Shafner* involved the taxation of a trust under analogous provisions of G. L. c. 62, the board could apply the principles of that case to the distribution by Energy. . . . On the other hand, the board may decide that the principles of *Shafner* do not control." *Northeast Petroleum Corp.* v. *Commissioner of Revenue,* 395 Mass. 207, 213-214 (1985).