PAUL F. BEATTY *vs.* NP CORPORATION.[1]

No. 90-P-463.

Suffolk. October 9, 1991. - December 3, 1991.

Present: WARNER, C.J., KASS, & GREENBERG, JJ.

*Attorney at Law*, Compensation. *Practice, Civil*, Summary judgment.

In an action brought by an assignee of a law firm's claim for a "premium"
    fee, billed to a client for which the firm had achieved a highly success-
    ful result in tax litigation, the judge correctly granted summary judg-
    ment in favor of the client, where the uncontroverted material facts
    demonstrated an agreement that the law firm would bill, and the client
    would pay, on a time charge basis and not on the basis of the result
    achieved. [610-613]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 1, 1988.

The case was heard by *John C. Cratsley*, J., on a motion
for summary judgment.

*James D. St. Clair* (*John J. Regan* with him) for the
plaintiff.

*Charles R. Parrott* (*Michael J. Engelberg* with him) for
the defendant.

KASS, J. For six years,[2] during which it sent progress bills

---

[1] The judgment appealed from refers only to NP Corporation, the
business entity in whose behalf legal services were rendered. The
complaint named The Charter Company, the corporate parent of NP
Corporation, Charter International Oil Company, and NPI Corporation as
codefendants. By voluntary stipulation under Mass.R.Civ.P. 41(a)(1)(ii),
365 Mass. 803 (1974), the complaint was dismissed, with prejudice,
against those three defendants, leaving only NP Corporation in the case.

[2] The first bill which appears in the record is dated July 15, 1982, and
covers "legal services and advice" for the period November 14, 1981,
through June 30, 1982. The parties acknowledge that the billing history in
the record is incomplete. From *Northeast Petroleum Corp. v. Commis-
sioner of Rev.*, 395 Mass. 207, 210 (1985), we learn that the tax assess-
ment which the defendant resisted was made March 30, 1981, and that

aggregating $132,173.59,[3] which the client paid, Sullivan & Worcester, a law firm, computed its bills on the basis of time charges and disbursements. The case on which the work billed was done involved a dispute with the Commonwealth over excise taxes. Ultimately, the law firm achieved a highly successful result for its client and billed a "premium" fee of an additional $721,888. The question is whether, on this record, the law firm was free to render a "premium" bill. A judge of the Superior Court, acting on a motion for summary judgment, decided the law firm could not charge the "premium" and dismissed the complaint against the client, NP Corporation (NPC). We affirm.

As the case was decided on summary judgment, we are obliged, in the first instance, to inquire whether the record leaves material facts in dispute. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711 (1991). The motion judge does not pass on the weight or credibility of the evidence, which may be in the form of affidavits, depositions, interrogatories, admissions, and sworn pleadings. *Attorney General* v. *Bailey*, 386 Mass. 367, 370, cert. denied, 459 U.S. 970 (1982). Inferences from the evidentiary materials are to be drawn in the light most favorable to the party opposing the motion (in this case the law firm). *Id.* at 371. That some facts are in dispute will not necessarily defeat a motion for summary judgment. The point is that the disputed issue of fact must be material. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). *Norwood* v. *Adams-Russell Co.*,

---

the taxpayer filed an application for abatement on May 5, 1981. Inferably, the plaintiff's law firm began working on the defendant's tax case no later than some time between those dates and, therefore, a bill for the earlier period was rendered. Nothing turns on this nuance.

[3]Copies of seven bills, with computer information backup, appear in the record, and show an aggregate of $128,813.60 in fees. There is also in the record, however, a compilation of billing documents in tabular form which lists ten bills and an aggregate of $132,173.59 in fees and disbursements. As observed in note 2, *supra*, the documented billing history is incomplete. Mr. Robert M. Buchanan, the partner who directed the tax case which gave rise to the contested bill, testified in his deposition that something in the neighborhood of $200,000 in progress bills had been sent out.

401 Mass. 677, 683 (1988). "As to materiality, the substantive law will identify which facts are material." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. at 248.

With those principles in mind, we summarize the undisputed facts and examine those which are disputed, in order to consider whether they are material.

Sullivan & Worcester began rendering legal services to NPC — then called Northeast Petroleum Corporation — in 1968. The lawyer and client relationship had been established by John A. Kaneb, who controlled NPC, and Mr. Paul F. Beatty, a member of the Sullivan & Worcester firm.[4] Generally, the law firm billed NPC on the basis of time charges, i.e., hours or fractions of hours spent multiplied by hourly rates assigned to the particular lawyers and paralegal personnel who worked on NPC matters. Expenses such as postage, telephone, photocopying, travel, secretarial overtime, computerized research, taxi fares, delivery services, and parking and meals incident to night work were billed as disbursements on behalf of the client and added to the fee component of the bills. In connection with the State excise tax case, Sullivan & Worcester, billed on a time and charges basis at periodic intervals.[5] Sometimes a bill would cover services in addition to the tax case. A representative bill read as follows:

> "FOR LEGAL SERVICES AND ADVICE rendered to you from November 14, 1981 through June 30, 1982 as your special counsel for specific affairs referred to us, including, in particular, the following: continued research, memoranda and correspondence with your general counsel concerning your claim against The Commonwealth of Massachusetts for excise taxes paid by you under protest with respect to the liquidation of Energy Company of Louisiana, Ltd., and preparation

---

[4]Sullivan & Worcester assigned its claim to Mr. Beatty, and the latter is the named plaintiff in this action.

[5]From the incomplete billing history furnished, the intervals between bills are not consistent, although they suggest an effort to bill on a quarterly basis.

for the hearing before the Appellate Tax Board over that issue; miscellaneous postclosing documentation of subleases and leases of property formerly used by Mercury Oil; . . ."

Kaneb had expressed himself as pleased with the Sullivan & Worcester time charges, which he thought were somewhat lower than those of other "Class A law firms" in Boston. Beatty had responded that he had tried to keep the bills that way. Concerning the Massachusetts excise tax case, neither Kaneb and Beatty, nor anyone else at NPC and Sullivan & Worcester, had discussed what Sullivan & Worcester would regard as a fair and reasonable fee or the method of billing. There was no explicit fee agreement.

On February 28, 1983, The Charter Company bought the stock of NPC and the management of The Charter Company became responsible for business decisions about the excise tax case. A decision of the Appellate Tax Board about the case issued on May 16, 1983, was adverse to the taxpayer,[6] and the management of Charter inquired of Sullivan & Worcester about the costs and benefits to be considered in deciding whether to press an appeal. In response, Mr. Buchanan of Sullivan & Worcester wrote a letter on June 28, 1984, to the vice president and controller of NPC, which included the following pertinent paragraph:

> "There is approximately $4 million, including interest, at stake in this appeal. The issues were thoroughly briefed before the Appellate Tax Board, but we would have to update our research and adapt our earlier briefs to concentrate on the grounds of decision in the enclosed report. The legal fees for carrying the case through our Supreme Judicial Court would be a small fraction of the amount at stake, no more than $50,000 and probably a good deal less. Therefore, we recom-

---

[6]The history of the tax case and the resolution of that case appear in two opinions of the Supreme Judicial Court: *Northeast Petroleum Corp.* v. *Commissioner of Rev.*, 395 Mass. 207 (1985), and *Commissioner of Rev.* v. *Northeast Petroleum Corp.*, 401 Mass. 44 (1987).

mend that the appeal be taken and prosecuted to completion."

Richard Bastien, who at the time was acting as the chief operating officer of NPC, decided to go ahead with the appeal as it was "a good business deal." The subject of bonus or performance premium billing, should the case have a successful ending, was not mentioned by the law firm or the client.

Although the appeal to the Supreme Judicial Court was successful, that was not the end of the affair. The case was remanded to the Appellate Tax Board and from there took another trip to the Supreme Judicial Court, this time with the Commissioner of Revenue as appellant. Three progress statements for services rendered appear in the record for this period. They disclose $50,141.22 billed for fees and costs. Those charges were paid. The fee component ($47,337.35) reflected time charges. In the last of those statements, dated April 21, 1987, those charges fluctuated from $210 per hour attributable to the most senior lawyer to $45 per hour for the most junior person, apparently a paralegal.

Ultimately, the Commonwealth was required to pay a refund of excise taxes plus interest which totalled $7,218,889. Sullivan & Worcester sent a final bill of $721,888, ten per cent of the recovery, plus $280.07 for disbursements.

What may be seen as disputed is whether there had been three occasions on which NPC had knowingly paid performance premium bills in connection with other matters without prior agreement so to do. Kaneb said NPC had been billed by Sullivan & Worcester for all matters on a time basis "[u]nless otherwise agreed." He recalled two cases, relating to tax assessments in Revere and Chelsea, when NPC had paid a performance premium, although he was uncertain whether he had agreed "beforehand" or whether it was entirely voluntary after the "pretty good result" was achieved. Mr. Buchanan testified on deposition that there was a performance premium component of "roughly $10,000" in connection with an arbitration involving a "New Haven Terminal." Mr. Russell D. Castleberry, at the pertinent time senior attorney and assistant secretary of The Charter Company,

made an affidavit that he approved the final bill on the New Haven Terminal case for payment without realizing that it had a component in excess of time charges.

Sullivan & Worcester's position on appeal is that, on the basis of inferences most favorable to it, there was no fee agreement in connection with the excise tax case and that it could, therefore, charge a fair and reasonable fee. In the absence of an agreement between lawyer and client, the lawyer may charge a fair and reasonable fee, giving account to such factors as the success achieved. *First Natl. Bank* v. *Brink*, 372 Mass. 257, 264-267 (1977). What factors are to be considered in determining whether a lawyer's fee is fair and reasonable have been amply discussed in the cases and it is not necessary to dilate on the subject here. In addition to *First Natl. Bank* v. *Brink, supra*, see *Mulhern* v. *Roach*, 398 Mass. 18, 25-30 (1986), and *Salem Realty Co.* v. *Matera*, 10 Mass. App. Ct. 571, 576 (1980). See also S.J.C. Rule 3:07, DR 2-106(B), as amended, 382 Mass. 772 (1981).

Unlike the circumstances in the *Brink* case, when no fee formula had been suggested, the uncontroverted material facts in the instant case march to the conclusion that Sullivan & Worcester and NPC had agreed that NPC was to be billed on a time charge basis unless the firm and NPC agreed otherwise. There was no evidence of agreement to the contrary. Rendering bills for services on a time charge basis, without reservation or other contrary indicators, constituted a proposal by the law firm about how it would bill and the payment of those bills by NPC expressed its agreement to that basis of charging for legal services. That charges for the excise tax case were sometimes combined in a single bill with charges for other matters further illustrates that the excise tax case was not flagged for special billing by the law firm, whatever may have been the firm's private and uncommunicated expectations. The time charge bills never indicated that the fees were other than final for the time period covered. In addition to Sullivan & Worcester's consistent pattern of billing on a time charge basis in connection with the excise tax case, there is its letter of June 28, 1984, which, as it speaks

to the client, confirms a time charge fee arrangement. That letter states that additional legal fees to carry the case through appeal would not exceed $50,000; nothing is said about a premium in the event of victory.

The law firm argues that the letter is ambiguous, but there is ambiguity only if one reads into it something which the text of the letter does not touch upon, even inferentially. The letter does not say that $50,000 is the most that will be charged if the appeal is unsuccessful, but that it may be more if the appeal is successful. As a general proposition, the meaning of a written document, if placed in doubt, is construed against the party that wrote it, *Merrimack Valley Natl. Bank* v. *Baird*, 372 Mass. 721, 724 (1977), and the principle surely counts double when the drafter is a lawyer writing on his or her own account to a client. In setting fees, lawyers "are fiduciaries who owe their clients greater duties than are owed under the general law of contracts." Restatement (Third) of the Law Governing Lawyers § 46 comment b (Tent. Draft No. 4, 1991).[7]

In support of his position, Mr. Beatty relies on his and Mr. Buchanan's deposition testimony to the effect that they proposed to render a fair and reasonable bill to NPC, as they did with clients generally, and that results achieved were an appropriate measure, which they frequently employed, for a bonus in addition to time charges. The difficulty is that their subjective and unexpressed expectations cannot refute an agreement which emerges from the objective facts; contracts rest on objectively expressed manifestations of intent. *Pahlavi* v. *Palandjian*, 809 F.2d 938, 945 (1st Cir. 1987). Restatement (Second) of Contracts § 2 comment b (1981). Here the expressed manifestations, objectively based on the

---

[7]As this case vividly illustrates, the better practice for lawyers is to outline for a client in writing at the outset of the matter the basis, rate or factors on which a fee shall be charged, unless the legal services fall into a category where the basis for billing has been well established with the particular client. See Model Rules of Professional Conduct Rule 1.5(b) (Proposed Final Draft 1981); Restatement (Third) of the Law Governing Lawyers § 50 (Tent. Draft No. 4, 1991).

billing pattern and the June 28 letter, constituted an agreement to charge on the basis of time.

We are left to examine whether that conclusion deteriorates in light of the facts which may fairly be thought to be in dispute, i.e., to consider whether those facts are material to resolution of the controversy. The disputed facts concern whether there were instances in which Sullivan & Worcester billed NPC on a performance premium basis. Looking at those facts most favorably from the point of view of the law firm, there were only three such instances over almost two decades of representation of NPC. That does not establish a pattern. Moreover, it was not controverted that in two of those cases the client had agreed to a bonus payment. In the third and only instance involving the successor management of NPC, the premium was so modest that it was effectively buried in the bill and, indeed, was not recognized as a premium by the client. The disputed previous instances of premium billing are so isolated and sui generis that they do not constitute useful information bearing on fee arrangements between the law firm and the client generally or in this case, in particular. Consequently, the evidence of the plaintiff, the nonmoving party in this case, is insufficient to establish an essential element in the nonmoving party's claim. *Kourouvacilis* v. *General Motors, Inc.*, 410 Mass. at 715. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . and . . . [the rule] should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323-324 (1986). *Kourouvacilis* v. *General Motors, Inc.*, 410 Mass. at 713.

*Judgment affirmed.*