COMMISSIONER OF REVENUE *vs.* THE GILLETTE COMPANY.

Suffolk. February 3, 2009. - June 11, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Corporation,* Merger, Subsidiary. *Taxation,* Corporate excise, Liquidation of controlled foreign subsidiary, Investment tax credit. *Statute,* Construction. *Words,* "Disposition."

A tax-free liquidation of all assets owned by a wholly-owned subsidiary into its parent corporation did not effect a "disposition" of those assets within the meaning of G. L. c. 63, § 31A, so as to trigger the recapture of investment tax credits against the State corporate excise tax. [75-80]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Kenneth W. Salinger,* Assistant Attorney General, for Commissioner of Revenue.

*John S. Brown (Matthew D. Schnall & Donald-Bruce Abrams* with him) for the taxpayer.

COWIN, J. The issue in this case is whether the tax-free liquidation of all assets owned by a wholly-owned subsidiary into its parent corporation effected a "disposition" of those assets triggering the recapture of investment tax credits against the State corporate excise tax. The Appellate Tax Board (board) held that it did not, and the Commissioner of Revenue (commissioner) appealed. We affirm the board's decision.

*Background.* 1. *The statutory scheme.* Massachusetts law imposes a corporate excise tax on foreign and domestic corporations engaged in business in the Commonwealth. See G. L. c. 63, §§ 32, 39. General Laws c. 63, § 31A (*i*), allows a credit, the so-called "investment tax credit" (ITC), against the excise for "manufacturing corporation[s]," "business corporation[s] engaged primarily in research and development," and "corporation[s] primarily engaged in agriculture or commercial fishing." The

amount of the credit "shall be three per cent of the cost or other basis for federal income tax purposes of qualifying tangible property acquired, constructed, reconstructed, or erected during the taxable year, after deduction therefrom of any federally authorized tax credit taken with respect to such property." *Id.* "Qualifying property" refers to "tangible personal property and other tangible property including buildings and structural components of buildings acquired by purchase, as defined under [26 U.S.C. § 179(d)] as amended and in effect for the taxable year . . . ; used by the corporation in the [C]ommonwealth; situated in the [C]ommonwealth on the last day of the taxable year; and which is depreciable under [26 U.S.C. § 167] and has a useful life of four years or more." *Id.*

If the qualifying property "is disposed of or ceases to be in qualified use prior to the end of the taxable year in which the [ITC] is to be taken, the amount of the [ITC] shall be that portion of the [ITC] . . . which represents the ratio which the months of qualified use bear to the months of useful life." G. L. c. 63, § 31A (*e*). The "useful life" of the property is the same as that used by the corporation for the purpose of calculating depreciation under the Federal income tax law. See 26 U.S.C. § 168 (2000). The statute also contains a recapture provision, which provides that "[i]f property on which [an ITC] has been taken is disposed of or ceases to be in qualified use prior to the end of its useful life," and if the property has been in qualified use for fewer than twelve consecutive years, then "the difference between the credit taken and the credit allowed for actual use must be added back as additional taxes due in the year of disposition." G. L. c. 63, § 31A (*e*). "The amount of credit allowed for actual use shall be determined by multiplying the original credit by the ratio which the months of qualified use bear to the months of useful life." *Id.*[1]

2. *Facts.* We recite the board's findings of fact, which are

[1]The operation of the recapture provision is illustrated by the following example: On January 1, 2009, Taxpayer Corp. purchases a piece of manufacturing equipment, which has a useful life of 120 months, for $1,000,000 and immediately puts it into service in Massachusetts. The purchase allows Taxpayer Corp. to claim an investment tax credit (ITC) against its corporate excise for the 2009 tax year, equal to three per cent of the cost of the equipment, or $30,000. On January 1, 2013, Taxpayer Corp. sells this equipment to another

based on the parties' stipulations and exhibits, supplemented with the undisputed facts contained in the record. The taxpayer, The Gillette Company (Gillette), is a Delaware corporation that, through its subsidiaries, manufactures and sells consumer personal hygiene and other products. One of these subsidiaries was The Gillette Company (USA), Inc. (Gillette USA), which owned and operated a factory in Boston where it produced shaving products entitling it to claim ITCs against its corporate excise under G. L. c. 63, § 31A (*i*).

On December 28, 1998, Gillette acquired all of Gillette USA's outstanding shares of stock. Gillette USA was then liquidated and merged into Gillette on December 31, 1998, in a tax-free liquidation. Gillette succeeded to all of Gillette USA's assets, including the shaving products factory in Boston that had entitled Gillette USA to claim ITCs. The day-to-day operations of the shaving products factory were unaffected by the merger, and the plant continued to operate.

Gillette, as the principal reporting corporation for its group of affiliates, filed a combined Massachusetts corporate excise return on Form 355C-B for the 1998 tax year. Gillette USA also filed a corporate excise return on Form 355C-A as a member of the combined group for the same tax year. See 830 Code Mass. Regs. § 63.32B.1(12)(a) (2006) ("The Form 355C-A or 355C-B filed by the principal reporting corporation calculates the excise attributable to the property owned by the principal reporting corporation and the excise attributable to the group's combined net income. The Forms 355C-A or 355C-B filed by other group members reflect only excise attributable to the property of those members"). On these returns, Gillette USA was reported to have $3,293,815 of unused ITCs carried over from prior years, and also reported to have made expenditures in 1998 that entitled it to

company, and the property is disposed of on that date. Because the equipment was held by Taxpayer Corp. in qualified use for only forty-eight months of the equipment's life, Taxpayer Corporation is subject to an ITC recapture tax in the year of disposition equal to the difference between the credit taken and the ITC that would be allowed for actual use. The ITC allowed for actual use under G. L. c. 63, § 31A (*e*), is the portion of the ITC claimed by Taxpayer Corp. that represents the ratio that the months of actual qualified use bear to the months of the equipment's useful life, ($48/120$) x $30,000, or $12,000. Thus, the amount of ITC recapture tax payable by Taxpayer Corp. for the 2013 taxable year is equal to $30,000 minus $12,000, or $18,000.

claim $9,377,040 of additional ITCs. On its own return, Gillette USA applied these ITCs to its excise tax liability for 1998 to the extent permitted by G. L. c. 63, § 32C. Gillette reported the tax attributable to Gillette USA's net income on the combined tax return. See G. L. c. 63, § 32B, as amended through St. 1988, c. 202, § 15.

3. *Proceedings.* Following audit, the commissioner assessed Gillette USA for unpaid corporate excise in the amount of $4,812,418,[2] plus penalties and interest, on the theory that the merger between Gillette and Gillette USA constituted a "disposition" of the qualifying property that entitled Gillette USA to ITCs prior to the end of that property's useful life, thus subjecting Gillette USA's previously claimed ITCs to recapture under G. L. c. 63, § 31A (*e*). Gillette, as successor to Gillette USA, applied for an abatement. The commissioner denied the application, and Gillette filed a petition with the board seeking review of the commissioner's decision.

The board held that the tax-free liquidation of Gillette USA by Gillette did not result in a disposition of the assets qualified for ITC treatment under G. L. c. 63, § 31A (*e*). It therefore granted the abatement sought by Gillette. The commissioner subsequently appealed pursuant to G. L. c. 58A, § 13. We transferred the case from the Appeals Court on our own motion.

*Discussion.* "Our review of any decision of the board is limited to questions of law." *Towle* v. *Commissioner of Revenue*, 397 Mass. 599, 601 (1986). See G. L. c. 58A, § 13. We will not disturb the board's decision "if it is based on substantial evidence and on a correct application of the law." *Koch* v. *Commissioner of Revenue*, 416 Mass. 540, 555 (1993).

We traditionally give "deference to the expertise of the board in tax matters involving interpretation of the laws of the Commonwealth." *Northeast Petroleum Corp.* v. *Commissioner of Revenue*, 395 Mass. 207, 213 (1985), *S.C.*, 401 Mass. 44 (1987). However, "principles of deference . . . are not principles of abdication." *Duarte* v. *Commissioner of Revenue*, 451 Mass.

---

[2]The commissioner issued two notices of intention to assess, one for $4,812,418 and one for $4,812,419. Although the discrepancy is not explained, the parties stipulated before the board that the amount allegedly owed by Gillette USA is $4,812,418.

399, 411 (2008), quoting *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgt. Bd.*, 421 Mass. 196, 211 (1995). "The proper interpretation of a statute is a question of law for us to resolve." *Bell Atl. Mobile of Mass. Corp., Ltd.* v. *Commissioner of Revenue*, 451 Mass. 280, 283 (2008). In doing so, "[t]he general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Commissioner of Revenue* v. *Dupee*, 423 Mass. 617, 620 (1996), quoting *Industrial Fin. Corp.* v. *State Tax Comm'n*, 367 Mass. 360, 364 (1975).

The term "disposed of" is not defined in the statute. We have said with respect to other tax incentive statutes, however, that they "must be fairly construed and reasonably applied in order to effectuate the legislative intent and purpose to promote the general welfare of the Commonwealth." *Emhart Corp.* v. *State Tax Comm'n*, 363 Mass. 429, 432 (1973), quoting *Assessors of Boston* v. *Commissioner of Corps. & Taxation*, 323 Mass. 730, 741 (1949). The legislative purpose of G. L. c. 63, § 31A, is clear. The ITC statute is meant to create an incentive for certain businesses to locate their operations in Massachusetts, so that the State's economy will be stimulated and more of its citizens will be employed. The statute does so by providing a tax credit equal to a portion of the cost or basis of certain kinds of equipment for use in Massachusetts. Consistent with this purpose, the recapture provisions of § 31A (*e*) are intended to discourage companies from reneging on their end of the bargain. Companies that leave Massachusetts after fewer than twelve years by selling their qualifying property may subject themselves to the recapture on a pro rata basis of ITCs they had claimed previously. See G. L. c. 63, § 31A (*e*). In such cases, the new corporate buyer that has invested in the Commonwealth and contributed to its economic prosperity will receive an ITC equal to "three per cent of the cost or other basis" of the qualifying assets. G. L. c. 63, § 31A (*i*).

The commissioner argues that Gillette USA should be deemed to have "disposed" of its qualifying assets by transferring them

to Gillette. If the liquidation and merger of Gillette USA into Gillette resulted in the "disposition" of the qualifying assets, then Gillette USA's previously claimed ITCs may be subject to recapture because the qualifying property was "disposed of . . . prior to the end of its useful life." G. L. c. 63, § 31A (*e*). In turn, Gillette would be entitled to claim its own ITCs, equal to three per cent of the adjusted basis of the qualifying property for Federal income tax purposes, because it "acquired" qualifying property from Gillette USA.[3] See G. L. c. 63, § 31A (*i*).

We disagree with the commissioner's interpretation. "It is a settled principle of our taxation jurisprudence that tax statutes are 'to be construed as imposing taxes with respect to matters of substance and not with respect to mere matters of form.' " *Commissioner of Revenue* v. *J.C. Penney Co.*, 431 Mass. 684, 688 (2000), quoting *Green* v. *Commissioner of Corps. & Taxation*, 364 Mass. 389, 394 (1973). Contrary to the commissioner's argument, the statutory language does not compel a conclusion that the merger at issue here constituted a "disposition" of assets. It is true that the commonly understood meaning of "disposition" is the act of "get[ting] rid of" something, or "the transfer of property from one to another." Webster's Third New Int'l Dictionary 654 (1993). The commissioner's argument in this case rests largely on the fact that "[a]s a matter of law, Gillette USA and [Gillette] are legally separate entities, and the transfer of property from one to the other is a 'disposition' of property to a third-party."

However, in substance if not in form, Gillette is engaged in a "mere continuation" of Gillette USA's activities with respect to the assets at issue here. *Milliken & Co.* v. *Duro Textiles, LLC*, 451 Mass. 547, 556-558 (2008). In the case of a "reorganization transforming a single company from one corporate entity

---

[3]Although, under the commissioner's reading of the statute, Gillette would be entitled to claim new ITCs equal to the basis of the qualifying property it "acquired" from Gillette USA, the value of these ITCs will be less than the value of those previously claimed by Gillette USA. Under G. L. c. 63, § 31A (*i*), the value of any ITCs to which Gillette is entitled is three per cent of the "cost or other basis for federal income tax purposes" of the qualifying assets. The basis that Gillette would use to calculate the amount of these new ITCs is equal to the amount Gillette USA initially paid for the assets less the sum of depreciation deductions claimed by Gillette USA with respect to that property in prior taxable years. See 26 U.S.C. §§ 167(a) and (c)(1), 334(b)(1), 1011(a), and 1016(a)(2) (2000). This would be a basis lower than Gillette USA's.

into another," where the "purchasing corporation 'is merely a "new hat" for the seller,' " we have imposed successor liability on the corporate purchaser of the seller corporation's assets for the reason "that, in substance if not in form, the purchasing corporation is the same company as the selling corporation." See *id.* at 557-558, quoting *McCarthy* v. *Litton Indus., Inc.*, 410 Mass. 15, 21-22 (1991). Similarly, the conclusion that the liquidation of Gillette USA into Gillette was not a "disposition" of the former's assets "is justified on the theory that, in substance if not in form, [Gillette] is the same company as [Gillette USA]" with respect to those assets. *McCarthy* v. *Litton Indus., Inc., supra* at 22. In these circumstances, "only the form and not the facts of ownership and use" of the relevant assets has changed as a result of the merger. *Emhart Corp.* v. *State Tax Comm'n*, 363 Mass. 429, 432 (1973).

The commissioner's argument in this case is also unpersuasive because it is similar to that made by the taxpayer in the *Emhart* case, which this court rejected. In that case, which concerned a statute exempting from the corporate excise certain machinery and equipment located in Massachusetts,[4] the taxpayer had acquired qualifying property from its controlled subsidiary when the latter was merged into the former. See *id.* at 430. The taxpayer argued that it was entitled to the exemption because it had acquired qualifying property from a different corporation, albeit one the taxpayer owned and controlled. *Id.* at 429-430.

Although we agreed that the statute could be read in the manner suggested by the taxpayer, the court held that to do so would be to ignore the purpose of the statute, which, as is true of § 31A, was to "increase investment in machinery and equipment in Massachusetts." *Id.* at 431-432. Thus, we concluded "that a mere paper transfer, affecting only the form and not the facts of ownership and use, and not changing the 'adjusted basis' of the property in question, neither adds to nor subtracts from the exemption otherwise available." *Id.* at 432. The liquidation and merger here, which the commissioner claims creates additional tax liability, was as much a "paper transfer, affecting only the form and not the facts of ownership and use," as that at issue in the *Emhart* decision. In this case, § 31A should not be

---

[4]This statute, G. L. c. 63, § 30 (7), inserted by St. 1962, c. 756, § 2, was replaced by the same legislation that enacted G. L. c. 63, § 31A. See St. 1970, c. 634, §§ 1, 2.

read either to increase or to decrease the amount of tax liability simply because the corporation has undertaken a tax-free liquidation and merger. Although the *Emhart* decision dealt with a different statute, its principles are equally persuasive here, and the commissioner's interpretation of § 31A is inconsistent with those principles.

Our decision is consistent with the conclusions of taxing authorities in other jurisdictions with similar ITC statutes. Indeed, the relevant provisions of G. L. c. 63, § 31A, are virtually identical to analogous provisions of the ITC statutes enacted in New York and Rhode Island. Compare N.Y. Tax Law § 210(12)(a), (b), (g) (McKinney Supp. 2009), and R.I. Gen. Laws § 44-31-1(a), (b), (f) (LexisNexis 2005), with G. L. c. 63, § 31A (*e*), (*i*).[5] In both of those States, the administrative agencies responsible for enforcing the State tax laws have issued regulations providing that the liquidation and merger of a subsidiary into a parent corporation, as occurred here, does not constitute a "disposition" within the meaning of the relevant ITC recapture provisions. See 20 N.Y.C. R.R. § 5-2.8(e) (1998); R.I. Code R. 46 050 018-9 (2009). As the commissioner observes, Massachusetts has no analogous regulations. However, the absence of such regulations does not prevent this court from accepting an interpretation of the word "disposition" as used in G. L. c. 63, § 31A, similar to those which the taxing authorities in New York and Rhode Island have adopted.[6]

*Conclusion.* The Legislature did not intend that a tax-free liquidation and merger of a wholly-owned subsidiary into a par-

---

[5]Indeed, as noted by the board, the Massachusetts ITC statute appears to have been modeled on the New York statute, which was enacted one year prior to the enactment of § 31A.

[6]Federal law formerly contained a similar, but not identical, ITC provision, codified at 26 U.S.C. § 47(a)(1) (1988). However, the Federal ITC scheme differs from G. L. c. 63, § 31A, because of another Federal provision, still in effect, providing that there is no recapture tax where "investment credit property" is disposed of or ceases to qualify as "investment credit property" "in any transaction to which [26 U.S.C. § 381(a)] applies," which includes tax-free liquidations pursuant to 26 U.S.C. § 332 (2000). See 26 U.S.C. §§ 50(a)(4)(B), 381(a)(1) (2000). Although G. L. c. 63, § 31A (*e*), does not contain any provision analogous to 26 U.S.C. § 50(a)(4)(B), we do not infer solely from the absence of such a provision an intent by the Legislature to reach a different result under our State's corporate tax laws.

ent corporation constitute a "disposition" of the subsidiary's as-
sets for the purposes of § 31A. We defer to the board's interpreta-
tion of § 31A's language in this case not only because the board
adopted it, but, more importantly, because it is correct. See *Bell
Atl. Mobile of Mass. Corp., Ltd.* v. *Commissioner of Revenue*,
451 Mass. 280, 287-288 (2008).[7]

> *Decision of the Appellate Tax
> Board affirmed.*

---

[7]Because of our decision in this case, we need not address other issues
raised.