JANET M. FINNEY *vs.* MADICO, INC., & others.[1]

No. 95-P-217.

Middlesex. October 21, 1996. - January 16, 1997.

Present: KASS, GILLERMAN, & SMITH, JJ.

*Practice, Civil,* Summary judgment, Statute of limitations. *Anti-Discrimination Law,* Employee, Prima facie case, Sex. *Employment,* Discrimination. *Privacy. Limitations, Statute of.*

On a claim of unlawful discharge based on gender bias, a Superior Court judge incorrectly entered summary judgment for the employer, where the record contained sufficient evidence to make out a prima facie case of discrimination, thus material facts with respect to the employer's reasons for its actions remained in dispute. [50-51]

A claim for invasion of privacy was barred by the statute of limitations. [51-53]

CIVIL ACTION commenced in the Superior Court Department on November 15, 1993.

The case was heard by *Hiller B. Zobel,* J., on a motion for summary judgment.

*Laura R. Studen (Justine H. Brousseau* with her) for the plaintiff.

*Sharon R. Burger* for the defendants.

· KASS, J. After examining the materials on summary judgment and hearing argument, a judge of the Superior Court concluded that the plaintiff Janet M. Finney had adduced no more than stray remarks suggestive of impermissible bias, of the sort described in *Johansen* v. *NCR Comten, Inc.,* 30 Mass. App. Ct. 294, 302 (1991), and that this was insufficient to make out her claim of unlawful discharge based on gender bias. We begin our review of whether summary judgment was correctly granted with an examination of that point. Also before us, on a cross appeal by the defendants, is a judgment

---

[1] C. Ian Dodd and Kenichi Yokoyama.

in favor of Finney, after trial, on a count of invasion of privacy.

1. *The claim of wrongful discharge based on gender bias.*

(a) *Facts.* We set out the facts on the basis of a reading of the summary judgment materials in a light most favorable to the nonmoving party, here the plaintiff. *Blare* v. *Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. 437, 438 (1995). *Tardanico* v. *Aetna Life & Cas. Co.,* 41 Mass. App. Ct. 443, 448 (1996).[2] Finney began work as a personnel clerk at Madico, Inc. (Madico), a manufacturer of window films, other adhesive films, and graphic arts products, in May, 1983. By 1987, she had ascended to manager of human services.[3] That year, a Japanese company, FSK Corporation (FSK), acquired Madico, and Kenichi Yokoyama, one of the defendants, assumed the position of chairman of the board of Madico.

Over the next three years, Yokoyama, other managers of Japanese background, and occasional company visitors from Japan dropped the comments to which Finney points as demonstrative of the hostility to women managers at Madico under the new regime. In November, 1990, Yokoyama had asked Finney how she had wound up in her job and commented that women did not have management jobs in Japan. Women, he observed, did not make good managers. On another occasion (Finney was vague as to date, placing the conversation some time between 1987 and 1990), Yokoyama inquired of Finney whether she was married and had children. She replied that she was married but did not have children. Yokoyama asked whether she planned to have children.[4] Although Madico had only one woman in sales, when Finney called that to Yokoyama's attention, he replied that "he would probably not be looking for any further females."

Paula M. Koczur was vice-president of administration and finance at Madico, the number two executive position at the time the company was sold to FSK. Aki Nemoto, the market-

---

[2] The defendants have moved to strike sections of the plaintiff's brief on the ground that those sections stated facts that had no support in the record. We have allowed that motion in part and, of course, have not considered the material that was struck.

[3] During the decade of the 1980s, the phrase "human services" gradually supplanted the word "personnel" in the corporate lexicon.

[4] That conversation was painful and intrusive to Finney, she said in a deposition, because she had not been able to bear children.

ing coordinator installed by FSK, told Koczur on several occasions during 1988 and 1989 that the Japanese do not believe women should be in positions of authority and that Yokoyama, as well as other managers from Japan at Madico, were uncomfortable with Koczur's holding a high-level position. Mugi Hanoi, an interpreter, said to Koczur during the same time period that she was amazed Koczur was still in her job, given the prejudice of the Japanese managers against women in authority.

In October, 1988, Koczur visited Japan on business and Yokoyama said to her that in Japan there were no women in management, and only a man could hold the position that Koczur held at Madico. At a company dinner in May, 1989, in the United States, Yokoyama remarked to Koczur that had the dinner been held in Japan, the only women in attendance would be geishas.

Following the merger of FSK with another Japanese company, LINTEC Corporation, an interpreter for Yoshi Kinugasa (another executive from Japan) related to Koczur that Kinugasa was humiliated by the fact of a woman holding a position in the company carrying greater respect and authority than the position he held. During the first week of September, 1990, Yokoyama said to Koczur that "women cannot work for women."

In a reorganization during the fall of 1990, two women were removed from Koczur's direct responsibility and were instructed to report to male managers. On December 3, 1990, Madico had a dinner that was part of a sales meeting. Koczur had always been invited to those dinners. She was not asked to the 1990 dinner, although her male peers were invited. Indeed, no women were invited to the dinner. On or about January 28, 1991, the Japanese installed a new president, C. Ian Dodd. When Koczur expressed dismay to Yokoyama that she had neither been informed of the hiring nor considered for the post, he told her that her problem was her gender, although he thought she was pretty good "for a woman."

In March, 1991, in the face of considerable losses run up by Madico, Dodd announced a reduction in force. Three managers were fired, including the plaintiff Finney and Koczur. All were women. The fourth person fired was a man; he was a salaried worker in research and the son of the former principal of Madico.

(b) *The summary judgment standard.* It hardly requires explication that the burden in summary judgment cases is on the moving party (here, the defendants) to show that no material facts are genuinely disputed and that, on the undisputed facts, the movant is entitled to judgment as matter of law. *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 808-809 (1991). *Beatty* v. *NP Corp.*, 31 Mass. App. Ct. 606, 607-608 (1991). In cases pitched on a claim of unlawful discrimination in employment, there must ultimately be a determination about the employer's state of mind, a fact rather easily placed in dispute and more often than not proved through circumstantial evidence. Summary judgment, therefore, is not easily attained in these kinds of cases, although it can be done. *Brunner* v. *Stone & Webster Engr. Corp.*, 413 Mass. 698, 705 (1992); *Tardanico* v. *Aetna Life & Cas. Co.*, 41 Mass. App. Ct. at 448. If, on the summary judgment materials, there are conflicting explanations for the firing (or not hiring), then a finder of fact must weigh the credibility of those explanations, and the case ceases to be a candidate for summary judgment. The conflict must be genuine, i.e., the proponent cannot establish it by simply saying so or adducing only evidence from which a finder could not reasonably infer unlawful discrimination. See, e.g., *id.* at 449-450.

(c) *Step one of the analysis of unlawful bias claims.* Much has appeared in the books since *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973), and *Wheelock College* v. *Massachusetts Commn. Against Discrimination*, 371 Mass. 130 (1976), about the approach to unlawful discrimination cases. Recent discussions of the three-step process involved appear in *Blare* v. *Husky Injection Molding Systems Boston, Inc.*, 419 Mass. at 441-445, and *Tardanico* v. *Aetna Life & Cas. Co.*, 41 Mass. App. Ct. at 447. Step one requires a prima facie showing of discrimination. Step two permits the employer to articulate nondiscriminatory reasons for what it has done. Step three requires the plaintiff to adduce evidence that the explanation was a pretext for the underlying and decisive unlawful bias.[5]

Here, the defendants had explained that sound manage-

---

[5]In those rare instances in which an employer expressly articulates a policy of unlawful discrimination (for example, had Madico published a bulletin saying, "Madico shall not place women in positions involving man-

ment and financial need called for a reduction of the number of people working in the human services office from three to two. Finney was the prime candidate for the ax because Dodd, the new president, thought her repeatedly indiscreet in what she said about individuals in the company at times when her views were not solicited and in places where expressing them was inappropriate. Managers and employees were reluctant to deal with Finney about sensitive issues because of apprehension that she would not maintain confidences. Dodd sized up Finney as a poor listener and as a person who had difficulty following instructions. Her gender, the defendants say, was manifestly not the issue because her duties were assumed by two women in the human services office.

Although the asserted facts set out in the previous paragraph bear on step two, the summary judgment contest was fought and decided entirely in step one, the prima facie case. The interior elements of step one in this case would be that Finney was (i) in the protected class, a woman; (ii) doing her job acceptably, as to which the summary judgment evidence was conflicting; (iii) had been fired; and (iv) if a prototype gender bias case, replaced by a man. *Tardanico* v. *Aetna Life & Cas. Co.*, 41 Mass. App. Ct. at 447 n.4. No such replacement occurred in this case because the plaintiff's specific job position, manager of human services, was eliminated, although the plaintiff suggests that indirectly a replacement by a man did occur through the pruning of women from the managerial ranks of the company. Perhaps more to the point, the fourth element of the prototypical prima facie case, who has replaced the aggrieved party, generally becomes immaterial in the context of a reduction-in-force firing because there is no replacement for the person discharged. Nor does a plaintiff have to prove each element of a prima facie case to avoid a directed verdict, *Whalen* v. *NYNEX Information Resources Co.*, 419 Mass. 792, 796 (1995), and, by parity of reasoning, a motion for summary judgment.

The Superior Court judge quite rightly observed that an

agerial responsibility"), the three-step procedure becomes inapplicable, and the burden on the defendant is to prove that it would have made the same decision even without the policy of unlawful discrimination. *Trans World Airlines, Inc* v. *Thurston*, 469 U.S. 111, 121 (1985). *Fields* v. *Clark Univ.*, 817 F.2d 931, 935-936 (1st Cir. 1987). *Johansen* v. *NCR Comten, Inc.*, 30 Mass. App. Ct. at 299.

isolated, ambiguous, or stray remark is insufficient, standing alone, to prove discriminatory employment action. *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 314 n.7 (1993). *Johansen* v. *NCR Comten, Inc.*, 30 Mass. App. Ct. at 302. The difficulty for the defendants is that the remarks described (and for purposes of summary judgment we must believe they were made) were not stray or isolated, and, so far as gender bias is concerned, not ambiguous. The plaintiff was able to adduce nine remarks sounding of bias against women in managerial positions. Some of them, such as, "women can't work for women" and that "it was humiliating for a male manager to hold a rank inferior to a woman" are not easily susceptible of explanation as reflections on differences between American and Japanese business mores. Nor did the remarks stand alone. That only women managers were barred from certain meetings and only women managers were fired stood as circumstantial evidence, persuasive for purposes of the prima facie case to be made in step one, that gender bias played a role in Finney's discharge.

The defendants point out that none of the Japanese managers, but, rather, the American president, Dodd, made the decision to discharge Finney. See *Brunner* v. *Stone & Webster Engr. Corp.*, 413 Mass. at 704; *Medina-Munoz* v. *R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 10 (1st Cir. 1990); *Smith* v. *Stratus Computer, Inc.*, 40 F.3d 11, 18 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995). For purposes of the prima facie case, a finder of fact could conclude that the designated chief executive appointed by the Japanese corporate parent would not be deaf to the views the Japanese managers had expressed about women managers. Dodd and Yokoyama denied having discussed a bias against women in general or Finney in particular, but a finder of fact would be entitled to discredit their testimony. See *Trustees of Forbes Library* v. *Labor Relations Commn.*, 384 Mass. 559, 569-570 (1981).

There was sufficient evidence to make out a prima facie case of discrimination and, accordingly, an insufficient basis for summary judgment on the basis of the record as it had then been developed. The burden now rests with Madico to prove that its stated reasons were legitimate and for Finney to prove that Madico's reasons were a pretext for discriminatory motive.

2. *Invasion of privacy.* Finney's complaint of unlawfully

discriminatory discharge was filed, after the obligatory and timely filing with the Massachusetts Commission Against Discrimination,[6] with the Superior Court on November 15, 1993. That complaint included a count (Count IV) under G. L. c. 214, § 1B, for invasion of privacy.[7] The parties agree that the limitations period for bringing an action under § 1B is three years, as provided in G. L. c. 260, § 2A, pertaining to actions of tort, which the statutory cause of action created by G. L. c. 214, § 1B, most resembles. Cf. *Pagliuca* v. *Boston*, 35 Mass. App. Ct. 820, 823 (1994).

The invasion of privacy claim is based on Yokoyama's questioning Finney about whether she was married, had children, or planned to have children.[8] Just when that conversation occurred was uncertain and the Superior Court judge found that he was "unable to say that the conversation took place after November 15, 1990." That finding has support in the record and, therefore, the statute of limitations would have run on the invasion of privacy claim. The judge reasoned, however, that Finney had put the defendants on notice of her invasion of privacy claim in answers to interrogatories she had made in April or May of 1993, in the proceedings before the Massachusetts Commission Against Discrimination. The defendants, the judge concluded, had suffered no prejudice from Finney's late complaint, and they should be estopped from asserting that lateness through application of the doctrine of laches. Laches, however, presupposes some delay in assertion of rights by a party, most often a plaintiff, to the detriment of the defendant. *Polaroid Corp.* v. *Traveler's Indem. Co.*, 414 Mass. 747, 759-760 (1993). *Yetman* v. *Cambridge*, 7 Mass. App. Ct. 700, 707 (1979). Here the de-

---

[6]See G. L. c. 151B, § 5, second par., thirty-sixth sentence; *Tardanico* v. *Aetna Life & Cas. Co.*, 41 Mass. App. Ct. 443, 444 (1996).

[7]General Laws c. 214, § 1B, as inserted by St. 1974, c. 193, § 1, provides: "A person shall have a right against unreasonable, substantial or serious interference with his privacy. The [S]uperior [C]ourt shall have jurisdiction in equity to enforce such right and in connection therewith to award damages."

[8]In light of the basis we have chosen for deciding the invasion of privacy claim, we intimate no view whether the questions put to Finney by Yokoyama are actionable as an invasion of privacy. Compare *Cort* v. *Bristol-Meyers Co.*, 385 Mass. 300, 302-303 (1982); *Bratt* v. *International Bus. Machines Corp.*, 392 Mass. 508, 518-519 (1984); Restatement (Second) of Torts § 652B, at 378, and § 652D, at 383 (1977).

fendant has not engaged in delay that worked to the disadvantage of the plaintiff in the sense of an adverse change of position. Laches is not a bar to the assertion of a statute of limitations defense.

In point of fact, the defendants filed their answer (including the affirmative defense of the bar of the statute of limitations) to the complaint thirty days late.[9] Finney's motion to strike the answer was not allowed, and we take the answer as accepted by the court as timely. Such was within the discretion of the court. Above all, the plaintiffs said nothing at the trial of the invasion of privacy claim about the answer having been filed late and, therefore, waived the point.

The invasion of privacy count is barred by the statute of limitations.

The entry of summary judgment on the counts alleging unlawful gender discrimination in the discharge of the plaintiff from employment is reversed. The judgment of $5,000 in damages payable by the defendants to the plaintiff for invasion of her privacy in violation of G. L. c. 214, § 1B, is reversed.

*So ordered.*

---

[9]A responsive pleading (motion to dismiss) was disposed of by the court on March 11, 1994. Under Mass.R.Civ.P. 12(a)(2), 365 Mass. 754 (1974), the defendants had an additional ten days to answer, i.e., until March 21, 1994. They filed their answer on April 20, 1994.