JAMES LEE *VS.* PRESIDENT & FELLOWS OF HARVARD COLLEGE.

No. 02-P-1587.

Middlesex. December 10, 2003. - April 20, 2004.

Present: GREENBERG, GRASSO, & GREEN, JJ.

*Employment,* Discrimination. *Anti-Discrimination Law,* Age, Employment. *Practice, Civil,* Summary judgment.

In an action alleging employment discrimination on the basis of age, the judge properly granted summary judgment in favor of the defendant employer, where the defendant met its burden of articulating legitimate, nondiscriminatory reasons for its decision to eliminate the plaintiff's position, and the plaintiff failed to produce any evidence that created a genuine issue of material fact concerning the truthfulness of the defendant's articulated reasons. [836-842]

CIVIL ACTION commenced in the Superior Court Department on March 19, 1999.

The case was heard by *Diane M. Kottmyer,* J., on a motion for summary judgment.

*Richard L. Neumeier* for the plaintiff.

*Richard J. Riley (John P. Coakley* with him) for the defendant.

GREENBERG, J. At age fifty-six, the plaintiff, Dr. James Lee, was informed by letter that his part-time job as an ophthalmologist at the eye services department of Harvard University's health services (Harvard) would no longer be funded, and his appointment would not be renewed. The question put is whether age discrimination lay behind the decision or, as Harvard posits, budgetary constraints led to elimination of the position.

For purposes of establishing a triable claim of age discrimination under G. L. c. 151B, § 4(1B),[1] "a plaintiff must demonstrate

---

[1]General Laws c. 151B, § 4(1B), as inserted by St. 1984, c. 266, § 6, provides: "It shall be an unlawful practice . . . [f]or an employer . . . because of the age of any individual, to refuse to hire or employ or to bar or to

that he or she was replaced by someone who is substantially younger or otherwise present some evidence that supports a reasonable inference that age was a determinative factor in the employer's decision." *Knight* v. *Avon Prods., Inc.,* 438 Mass. 413, 414 (2003). A Superior Court judge allowed Harvard's motion for summary judgment on Lee's age discrimination claim on the ground that Harvard met its burden of articulating a nondiscriminatory rationale and that Lee failed to adduce evidence to raise a genuine issue of material fact with respect to the truthfulness of Harvard's proffered reasons for the decision.[2] Lee appeals, contending that disputed issues of fact precluded the allowance of summary judgment. We affirm.

We have in mind the principle that "[s]ummary judgment is a disfavored remedy in the context of discrimination cases based on disparate treatment." *Blare* v. *Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. 437, 439 (1995). Where there is conflicting evidence as to the defendant's discriminatory motive, courts may not dispose of such cases on the basis of affidavits. *Id.* at 445. "That is not to say, however, that summary judgment is never appropriate in unlawful discrimination

discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification."

[2]Lee's appeal focuses on the second and third stages of the familiar three-stage order of proof set forth by the Supreme Court of the United States in *McDonnell Douglas Corp.* v. *Green,* 411 U.S. 792, 802 (1973), and adopted by the Supreme Judicial Court as a useful framework for deciding motions for summary judgment in G. L. c. 151B discrimination cases. See *Lipchitz* v. *Raytheon Co.,* 434 Mass. 493, 508 (2001). In the context before us, to make out a prima facie case in stage one, the plaintiff must establish that he was a member of the protected class; that his job performance was acceptable; that he was subject to an adverse employment decision; and that the employer sought to replace him with a younger person who was no more qualified than the plaintiff. See *Blare* v. *Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. 437, 441 (1995); *Tardanico* v. *Aetna Life & Cas. Co.,* 41 Mass. App. Ct. 443, 447 n.4 (1996). In stage two, the defendant must rebut the presumption of discrimination by producing some legitimate, nondiscriminatory reason for the employee's termination. See *Abramian* v. *President & Fellows of Harvard College,* 432 Mass. 107, 111, 116-117 (2000). Should the defendant satisfy that requirement, the burden then shifts back to the plaintiff, at stage three, and the plaintiff then needs to produce evidence that the reason articulated by the employer is a pretext for discrimination. *Id.* at 117-118.

cases." *Tardanico* v. *Aetna Life & Cas. Co.*, 41 Mass. App. Ct. 443, 448 (1996), and cases cited.

Here, the judge, viewing the evidence in a light most favorable to Lee, concluded that he qualified as a member of the protected class (over forty years of age)[3]; that he performed his ophthalmology role (a half day each week) at an acceptable level; and that his appointment after sixteen years of service was not renewed. For purposes of the motion, she assumed that he was equally qualified to do the ophthalmological work as Jeffrey Taveras, his colleague, who was seventeen years younger and survived the reorganization. Thus, for purposes of the motion, she concluded that Lee had established a prima facie case of age discrimination. See *Lipchitz* v. *Raytheon Co.*, 434 Mass. 493, 502 (2001).

Concerning Harvard's "stage two" rationale for not renewing Lee's appointment, the judge concluded that Harvard articulated, by competent proof, nondiscriminatory reasons for its decision. Those reasons were (1) the eye services department had exceeded its budget by $14,000; (2) Lee was a specialist in contact lenses and was the only ophthalmologist paid from the contact lens budget; (3) in the 1990's, the number of cases requiring contact lens specialists (as opposed to routine fittings by optometrists) had decreased significantly; and (4) Harvard determined that it was contracting for more hours of ophthalmology time than needed and that Lee was the least productive ophthalmologist whose work could be assumed by other staff members.

On appeal, Lee claims that the motion judge disregarded crucial evidence (under stage three) that demonstrated that Harvard's real motivation was to decrease the age of the workforce through early retirement. On March 22, 1996, Lee received a letter from Dr. Firmon Hardenbergh, chief of ophthalmology, informing him that his appointment would not be renewed. The letter incorporates the concept of cost savings. In pertinent part, the letter states:

---

[3]Section 1(8) of G. L. c. 151B, as appearing in St. 1984, c. 266, § 4, provides that "[t]he term 'age' unless a different meaning clearly appears from the context, includes any duration of time since an individual's birth of greater than forty years."

"[T]he eye service is overstaffed relative to our visit volume. As a consequence, we must implement this reorganization. It is based on *careful analysis* of service needs, clinician access and continuity of care for our patient population" (emphasis supplied).

Lee disagrees with the characterization of the analysis undertaken as careful. He claims that the data consisted of "a very rough analysis of the clinical activities in the department." It was described as a "rough analysis" by Kerry Michael, assistant director of human services, in her deposition. A report providing statistical support, confirming Michael's earlier assessment, was provided in the summary judgment materials.

Lee contends that it was error for the motion judge to rely on the statistical report because this analysis was not available to Hardenbergh at the time the decision to terminate him was made, citing *Perkins* v. *Brigham & Women's Hosp.*, 78 F.3d 747, 751 (1st Cir. 1996) ("[A]n employer's proffered justification must be based on information that it knew and relied upon at the time it decided to take the adverse employment action"). We disagree. The motion judge concluded that the statistical data was relevant because it was "consistent" with Michael's deposition testimony about her "rough analysis." Contrary to Lee's argument on this point, Michael defended her 1996 findings and conclusions in her deposition. Lee failed to proffer any admissible evidence that contradicted Michael's initial conclusions about the budgetary shortfall, and the substance of Michael's findings are undisputed. Even if there were conflicts (and we do not so decide), to defeat a summary judgment motion the asserted conflict "must be genuine, i.e., the proponent cannot establish it by simply saying so or adducing only evidence from which a finder could not reasonably infer unlawful discrimination." *Finney* v. *Madico, Inc.*, 42 Mass. App. Ct. 46, 49 (1997). Taken as a whole, and in the context that the job being eliminated was a one-half day per week position, Michael's testimony is consistent with the explanation contained in the 1996 letter.

Lee argues that the motion judge erred by "discounting" much of his deposition testimony on the issues of the funding of the contact lens service and the budgetary shortfall. We need

not delve into all of the details. As Harvard points out in its brief, the motion judge acknowledged some conflicts but was unpersuaded that they created a genuine issue of material fact as to the validity of the reasons given for nonrenewal of Lee's appointment. What we find crucial is that Harvard's summary judgment materials demonstrated that the budgetary shortfall could be cured by the elimination of a part-time position and that Harvard articulated legitimate, nondiscriminatory reasons for choosing to eliminate Lee's one-half day position. Nothing in what Lee submitted in any way refuted Harvard's nondiscriminatory reasons for eliminating Lee's position.

Despite unrebutted evidence that the contact lens service budget (from which Lee drew his salary) was in the red from 1994 to 1996, Lee contends that budgetary concerns were a pretext because he offered to reduce his salary to $1.00 per year. The motion judge found that "[a]t some point, Dr. Lee determined that his retirement benefits, including health insurance, would not vest until September 1997." In order to retain other benefits of employment and to preserve his status, Lee wrote a letter to Hardenbergh, dated May 29, 1996, that suggested several other alternatives. He proposed a new compensation scheme which included negotiating a pay reduction but also suggested changing the patient referral policy, so that all cataract surgeries formerly done by Taveras be referred to him. Clearly, Harvard was not under any obligation to consider a proposal submitted two months after Lee was notified of the elimination of his position. Further, the record contains unrebutted evidence that Hardenbergh, based on examination of patients treated by all three ophthalmologists, believed that Taveras was a superior cataract surgeon to either Lee or himself. Lee also argues that eye services did not perform cataract surgery and that, therefore, the claim that the decision to retain Taveras was based on his superior skills as a surgeon is not true. Our own review of the record and that of the motion judge demonstrated that Taveras continued to perform cataract surgery for the eye clinic's patients at the rate of thirty per year.

The fact that Lee's answers to interrogatories adverted to several ambiguous hearsay statements of his superiors that "Harvard's treatment of [him] would be age discrimination if

[he] were a full-time employee" or that "younger is cheaper" does not create a genuine issue of material fact with respect to pretext. At a June, 1996, meeting, he quotes Michael as saying, "It only comes to the bottom line, money." In the face of Harvard's demonstration that there was a legitimate fiscal necessity for downsizing the contact lens aspect of the eye services clinic, it became Lee's burden, pursuant to Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974) to "designate 'specific facts showing that there is a genuine issue for trial.' " *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 714 (1991), quoting from *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 324 (1986). See *Marenghi* v. *Mobil Oil Corp.*, 416 Mass. 643, 646 (1993). As the motion judge found, "[n]otwithstanding the allusion to age, [ambiguous statements that] also focus[] on cost will not support an inference that Harvard's stated reasons are false." See *Hazen Paper Co.* v. *Biggins*, 507 U.S. 604, 611 (1993); *James* v. *New York Racing Assn.*, 233 F.3d 149, 152 (2d Cir. 2000). These statements are insufficient alone or in combination to support an inference of discrimination. See *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 314 n.7 (1993); *Tardanico* v. *Aetna Life & Cas. Co.*, 41 Mass. App. Ct. at 450 ("isolated or ambiguous remarks, tending to suggest animus based on age, are insufficient, standing alone, to prove an employer's discriminatory intent").

Lee also relies on evidence that Harvard offered early retirement packages to former employees John Meagher and James Perry as evidence of age discrimination. Both stated that Harvard had discriminated against them. In addition, Lee adduced evidence from Meagher, by way of affidavit, that during the early 1990's, after Dr. David S. Rosenthal had assumed his position as medical director of health services, Meagher, as a part-time eye services optometrist, unsuccessfully sought an available full-time position. A younger optometrist was hired. Meagher sought an explanation from Rosenthal, who allegedly told him, "I'm sorry. They want a younger man." Thereafter, Hardenbergh and a representative of human resources regularly approached Meagher to inquire when he would retire. In late 1996, Hardenbergh and an administrator met with Meagher and told him that, due to restructuring, his position would be eliminated as of September 1, 1996. None of this evidence

requires extended discussion. Offering an early retirement package, generally viewed as a benefit to employees, does not evidence age discrimination. *Fagan* v. *New York State Elec. & Gas Corp.*, 186 F.3d 127, 133 (2d Cir. 1999). *James* v. *New York Racing Assn.*, 233 F.3d at 152-153. The statement to Meagher was not made by a person involved in the decision in this case, and there is no evidence that the persons referred to as "they" were involved in this decision. See *Tardanico* v. *Aetna Life & Cas. Co.*, 41 Mass. App. Ct. at 450.

Harvard stated legitimate, nondiscriminatory reasons for eliminating the plaintiff's position. The plaintiff did not produce any evidence that creates an issue of material fact concerning Harvard's articulated reasons.

*Judgment affirmed.*