Fremont-Smith, Thayer, J.
INTRODUCTION
The plaintiff Karen Fischer (“Fischer”) brings this action against the defendants, President and Fellows of Harvard College (“Harvard”) and David Kearns (“Kearns”), alleging age discrimination, retaliation and that Kearns intentionally interfered with her employment relationship with Harvard. The defendants move for summary judgment on all counts. For the reasons discussed below, the defendants’ motion for summary judgment is DENIED.
BACKGROUND
The undisputed facts and the disputed facts viewed in the light most favorable to the non-moving party, as revealed by the summaiyjudgment record, are as follows.
Harvard University is comprised of a number of different schools and departments. Most human resources *225 tasks such as hiring decisions are handled by individual schools or departments within the University. Additionally, Harvard operates an outpatient medical practice and infirmary known as Harvard University Health Services (“HUHS”). HUHS provides health services to Harvard students, employees and retirees and employs approximately three hundred and fifty individuals. Dr. David Rosenthal was the Director of HUHS at all times relevant to this case. HUHS Human Resources Department is run by an Assistant Director for Human Resources and Central Operations whose duties and responsibilities include the overall management and administration of the department.
Fischer began working for a Harvard entity in 1963, immediately after college. Since then she continued to work at Harvard in a variety of different offices, performing, at each, essentially the same function of personnel officer or human resources officer.[2]
On October 22, 1990, Fischer left the School of Public Health and began to work at HUHS. At HUHS, Fischer was employed as a Human Resources Coordinator. Her duties and responsibilities included interfacing with the employment office, being involved in disciplinary concerns, and providing advice and counsel to HUHS managers and staff. Fischer’s Staff Performance Evaluation states that Fischer’s major responsibilities include:
1. Interprets and applies personnel policies and procedures to ensure equily and consistency within the University Health Services.
2. Assists in analyzing and fulfilling staffing needs and helps achieve recruitment and affirmative action goals.
3. Coordinates programs for orientation of new employees and development of current staff.
4. Administer the compensation program by evaluating the classification of positions, establishing salaries, overseeing the performance evaluation process, and recommending and implementing annual merit increase programs.
5. Represents the Health Services on human resource related issues and committees, acting as a resource for information being relayed to both the University administration and the University Health Services.
6. Provides guidance and assistance to promote positive superior-staff relations and acts as a primary resource in the resolution of personnel problems.
7. Ensures the updating and maintenance of University Health Services personnel records.
April 23, 1992 Staff Performance Evaluation.
On June 1, 1999, defendant Kearns had begun to work as Assistant Director for Human Resources and Central Operations at HUHS. As Assistant Director, Kearns was the direct supervisor to Fischer and two other HUHS employees.[3] Kearns reported to Mary Hennings, HUHS Associate Director for Administration until she left HUHS in June 2002. After that Kearns reported directly to Dr. David Rosenthal.
Fischer was terminated effective July 31, 2002, after a waiting period for her to secure other Harvard-based employment. After Fischer applied for a different job at Harvard, Annette Bonasoiy, a human resources employee at the Radcliffe Institute called Kearns to inquire as to Fischer’s adequacy as an employee. Kearns claims he praised Fischer, but she was not offered the job. She subsequently filed this action alleging age discrimination, retaliation for protected status, and interference with her employment relationship. At the time of her termination she was 60 years old and had worked at Harvard for 39 years.
Fischer ascribes her termination by Kearns to age discrimination. At the hearing on this motion, her counsel contended that Kearns was plaintiffs only supervisor since 1989 to have found fault with her job performance. This is simply incorrect. Her employment record contains a long litany of complaints.
Prior to working for HUHS, while at the School of Public Health, she was disciplined by her supervisor Dean Richard Cannon (“Cannon”), the Administrative Dean. On March 26, 1989, Cannon gave her a written Staff Performance Evaluation, in which he criticized Fischer’s performance, writing “significant changes are needed in the quality and quantity of performance.” On June 13, 1989, he again wrote to Fischer stating: “Since your performance evaluation, which we completed on March 21, your performance has not improved.” Cannon warned that if her performance did not improve she might be terminated.[4]
On April 23, 1992, Fischer’s then supervisor Gioia Morongell wrote that Fischer “requires improvement,” and has a “defensive response when offered help or asked about status of an issue,” and “lacks proactive behavior in addressing goals.” Again, on April 27, 1993, Morongell wrote in her review, “my attempts to discuss expectations with Karen/offer recommendations have resulted in her increasingly unresponsive behavior.”
After Kearns became her supervisor in 1999 at HUHS, he gavé her a number of verbal and written warnings. First, on October 4, 2000, Kearns gave Fischer a verbal warning regarding her “disrespectful, mistrustful, intimidating and threatening demeanor” towards a manager, Jerrilyn Quinlan. Quinlan herself had complained to Kearns that Fischer has used a “strong tone of voice” in front of staff members in discussing an issue regarding a staff member’s schedule, and was “disrespectful” and “threatening” to Quinlan while talking about “a confidential employee issue in a public setting."
Then, on February 9, 2001 Kearns gave Fischer a written warning concerning two incidents with staff that Kearns believed to fall outside the scope of her job. In the first incident, Fischer allegedly discussed the reinstatement of sick time with Carmen Castellano which went *226 beyond merely informing Castellano of the correct office procedure. Rather, Fischer had purportedly advised an employee to retract a note from her physician in connection with her requested reinstatement of sick time and advised Castellano to procure a revised note from the physician, which Kearns considered to be above and beyond her proper role. In the second incident, Kearns admonished Fischer for counseling Diane Haleem at a time when Haleem was crying in the hallway about a problem with her leave of absence, without immediately communicating Haleem’s situation to Kearns (whose office was just down the hall). Then, Fischer was said to have come unannounced and uninvited into a private meeting between Haleem and her supervisors who, following the hallway incident, were discussing Haleem’s leave of absence problem with her. Kearns wrote, “you will review all staff and manager communications with me. We will review together and develop strategies prior to your responding.”[5]
Kearns gave a third warning to Fischer (her second written warning) on June 4, 2001. He describes three incidents involving Fischer’s purportedly inappropriate behavior with HUHS staffer Deb Watts, and managers Tony Both and Annamma Mathew. Watts had complained to Kearns that Fischer had told staff that HUHS was “the worst place [she had] worked at Harvard” and that she was “not the only one who felt that way.” Both and Mathew complained to him that Fischer had not followed up on assignments. Kearns informed Fischer that she might respond to staff and manager’s questions regarding policies and procedures without first speaking to him, but must review all action plans with him prior to implementation.
Finally, on November 16,2001, Kearns gave Fischer a final written warning, in which he referenced an incident which occurred on September 11, 2001, the day of the attack on the World Trade Center.
As a result of the September 11 attack, the husband of a HUHS employee named Desjardins had come to take his wife home, but had been told by Desjardins’s supervisor that she may not leave work. Fischer allegedly supported the supervisor’s decision to require Desjardins to stay. Desjardins then wrote a letter of complaint to President Summers, which Summers proceeded to forward eventually to Kearns. Although Desjardins’s letter itself had not mentioned Fischer, Kearns’s final written warning to Fischer refers to this incident as one in which Fischer purportedly failed to exercise good judgment in having given the advice she had to Desjardins’s manager, without first consulting him.
In support of her age discrimination claim, plaintiff also provides statistics which indicate that between 1999 and 2005, HUHS hired three hundred and nine employees, one hundred and seventy (170) of whom (55%) were over the age of 40, ninety-three (30%) of whom were over the age of 50, and nineteen (6.1%) of whom were over the age of 60. Four of these were older than Fischer when hired, and Fischer’s replacement was over age 40. No statistics were provided with respect to the age composition of the available pool of qualified applicants, however, so that no meaningful inference can be drawn by way of comparison.
DISCUSSION
Legal Standard
Summary judgment shall be granted where there are no genuine issues of any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element ofhis case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “In cases involving claims of employment discrimination, a defendant employer faces a heavy burden if it seeks to obtain summary judgment: summary judgment is disfavored in discrimination cases based on disparate treatment because the question of the employer’s state of mind (discriminatory motive) is ‘elusive and rarely is established by other than circumstantial evidence.’ ” Sullivan v. Liberty Mutual Insurance Co., 444 Mass. 34, 38 (2005), quoting Blare v. Huskey Injection Molding Sys. Boston, Inc., 419 Mass. 437, 439 (1995).
Summary Judgment Analysis
(1) Age Discrimination
The plaintiff alleges that because she was terminated and Harvard failed to rehire her after her termination, the defendants discriminated against her on the basis of her age in violation of G.L.c. 151B, §4(1B).
G.L.c. 151B, §4( IB), as inserted by St. 1984, c. 266, §6, provides:
It shall be an unlawful practice ... [f]or an employer . . . because of the age of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privilege of employment, unless based upon a bona fide occupational qualification.
“To present a triable claim of age discrimination under G.L.c. 15 IB, §4(1B), a plaintiff must demonstrate that he or she was replaced by someone who is substantially younger or otherwise present some evidence that supports a reasonable inference that age was a determinative factor in the employer’s decision.” Lee v. *227 President & Fellows of Harvard College, 60 Mass.App.Ct. 836, 837 (2004).
A three-stage burden-shifting analysis applies where, as here, the plaintiff has only circumstantial evidence to support her case. Sullivan v. Liberty Mutual Ins., supra at 39-40. First, the plaintiff must establish a primafacie case of discrimination by showing that she is a member of a protected class, that she performed her job at an acceptable level, and that when she was terminated, she was replaced by a significantly younger similarly qualified person. Chief Justice for Admin. and Management v. Mass. Comm’n Against Discrim, 439 Mass. 729, 732 (2003); Knight v. Avon Products, Inc. 371 Mass. 130, 135 n.5 (1976). As defendants concede that plaintiff has made out a primafacie case under stage 1, we proceed to the second stage, in which the burden shifts to the defendants to produce credible evidence of a non-discriminatory reason for the adverse employment decision. “The defendant may satisfy its burden by articulating ‘a lawful reason or reasons for its employment decision [and] producing] credible evidence to show that the reason or reasons advanced were real reasons.’ ” Abramian v. Harvard College, 432 Mass. 107, 116 (2000). Harvard has met this burden, as demonstrated by the statement of facts, above.
“At the third stage the employee must show that the basis of the employer’s decision was unlawful discrimination,” i.e., that the employer’s proffered reasons were a pretext for discrimination. Id., 117.
The question, then, is whether, as in Lee v. Harvard College, supra, Fischer “has failed to address evidence to raise a genuine issue of material fact with respect to the truthfulness of Harvard’s proffered reasons for its decision,” id. at 837, or whether, as in Dragoras v. School Committee of Melrose, 64 Mass.App.Ct. 429 (2005), plaintiff has asserted sufficient facts to create a jury issue as to whether Harvard’s proffered reasons are a pretext.
The statistical evidence proffered fails to provide any meaningful evidence, as it fails to provide any information of the age of available, qualified applicants as a basis for comparison. See Buckley Nursing Home, Inc. v. Mass. Comm.’n Against Discrim., 30 Mass.App.Ct. 174, 179 (1985) (where the Court relied on statistical proof of hiring no black workers in a largely black population to help support the conclusion that the plaintiffs proffered reason for the failure to hire him was a pretext for discrimination).
Nor do the few stray remarks about retirement provide any basis for a showing of age-based animus.[6] “[IJsolated or ambiguous remarks, tending to suggest animus based on age are insufficient, standing alone, to prove an employer’s discriminatory intent.” Tardanico v. Aetna Life & Cas. Co., 41 Mass.App.Ct. 443, 450 (1996), quoting Fontaine v. Ebtec Corp., 415 Mass. 309, 314 n.7 (1993); Sullivan, supra, 444 Mass. at 49-50; Lee v. Harvard College, 60 Mass.App.Ct. 836, 840-41 (2004) (summary judgment for defendant affirmed; stray remarks concerning the benefits of retirement insufficient to show pretext). Although the plaintiff also relies on the defendants’ criticism of her for not showing “initiative” as being a “classic instance of the stereotype that old people have no initiative,” no basis is given for the existence of any such stereotype or for attributing such to any of her supervisors.
On the other hand, plaintiff contends that Gaiel Thompson, Fischer’s replacement, was afforded disparately favorable treatment because her starting salary was $8,000 higher than Fischer’s salary at the time of her termination, and that Fischer had more relevant experience than Thompson. Plaintiff also alleges facts that question the accuracy, or bona fdeness, of each of Kearns’s job performance complaints against Fischer. For instance, plaintiff asserts that the complaints against her by the other identified managers were actually solicited by Kearns, and that the very numerosity of his complaints indicate that he was on a vendetta against her, rather than that her job performance was really inadequate.
Although, as in Dragoras, supra, this is a “close case,” the Court concludes that plaintiff has asserted sufficient facts to create a jury issue as to whether Harvard’s asserted reasons were a pretext for discrimination.[7] As in Scotte v. Arrow Electronics, 37 Mass.App.Ct. 954 (1994), where the evidence of age discrimination was, as here, questionable and based entirely on inference, Fischer may be said to have gained a “toehold” in the materials offered by her, to warrant the case going to trial. Id. at 955.
(2) Retaliation
The plaintiff also alleges that she was a victim of retaliation in violation of G.L.c. 151B. She first alleges that the defendants retaliated against her for her testimony in the Dr. James Lee proceeding against Harvard for age discrimination.[8] Dr. Lee sued Harvard in March 1999, when his part-time ophthalmologist appointment was not renewed. Fischer’s deposition under Rule 30(b)(6) was taken in that case on June 6, 2000 and January 29, 2001.
G.L.c. 15 IB, §4(4) provides:
It shall be an unlawful practice .. . (f)or any person, employer ... to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section five.
The plaintiff argues that she engaged in protected activity by testifying in the manner that she did in the age bias case brought against Harvard by Lee. She was terminated by Kearns about one month after her testimony. The defendants contend that there could have been no retaliatory motive because her testimony was in no way detrimental to Harvard. This is disputed, however, by plaintiff, and her deposition testimony, while generally supportive of Harvard against Lee, does contain one or more comments which could be construed to have been otherwise.[9] While any *228 possible inference of retaliation is not strong, there is a “toehold” which survives summary judgment.
(3) Intentional Interference
The plaintiff has also asserted against Kearns individually a claim of intentional interference with her employment relationship with Harvard. In order to survive summary judgment on a claim for intentional interference with employment, the plaintiff must prove that she had an advantageous employment relationship with her employer, the individual defendant knowingly induced the employer to break that relationship, the defendant’s interference was intentional and improper in motive and means, and the employee was harmed by the defendant’s actions. Weber v. Comm. Teamwork, Inc., 434 Mass. 761, 781 (2001). This claim survives to the same extent that her age discrimination claim survives (i.e., barely) being based on the same evidence.[10]
ORDER
For the above reasons, defendants’ motion for summary judgment is DENIED.

 Fischer also worked in the Department of Neurobiology at Harvard Medical School, the Office of Human Resources at Harvard University, and the Harvard School of Public Health.

 Prior to Kearns, Fischer had been directly supervised by Gioia Morongeil (a/k/a Gioia Bany), who had previously been the Assistant Director, and who had reported to Mary Hennings, HUHS Associate Director for Administration. After Gioia Morongeil left HUHS, but prior to Kearns’s employment, Maiy Hennings was briefly Fischer's direct supervisor.

 Plaintiff attempts to discredit Cannon’s evaluation by contending in her affidavit that Cannon had been “severed from employment at Harvard Pilgrim for sexual harassment prior to being hired by the Harvard School of Public Health."

 In a letter to Kearns dated February 18, 2001, Fischer denies both allegations, and states that she was performing her work function in both instances.

 The first was from Lydia Cummings, asking the plaintiff if she had considered retirement, and the second was from Polly Price, stating that increased health insurance can only be available after retirement.

 It is possible, of course, that Kearns was “out to get her,” but for reasons unrelated to her age. It will be plaintiffs burden at trial to prove that Harvard's purported reasons for terminating her were a pretext for discrimination.

 The Appeals Court eventually affirmed the dismissal of Lee’s case by way of summary judgment. See Lee v. Harvard College, supra.

 For example, in her deposition, plaintiff stated, when asked if she knew why Dr. Lee’s appointment was not renewed, said it was pursuant to a reorganization and went on to say that both she and Dr. Lee had been seeking information as to the reorganization, but that “the knowledge I had was the knowledge Dr. Lee had and that didn’t feel very comfortable, didn’t feel very solid.”

 For that very reason, however, this claim is probably redundant.